Appeal No. 21-55852

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

LITTLE ORBIT, LLC
Plaintiff – Appellant,

vs.

DESCENDENT STUDIOS INC. and ERIC PETERSON,
Defendants – Appellees

_____

On Appeal from the United States District Court for the Central District of
California
Civil Action No. 8:20-cv-00089-DOC-JDE, Hon. David O. Carter, Judge

_____

**APPELLANT'S APPENDIX RE
EMERGENCY MOTION UNDER CIRCUIT RULE
27-3 FOR STAY OF ORDER PENDING APPEAL
Vol. III of IV**

_____

M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LAW OFFICES OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101
Telephone: (949) 677-6434
Attorneys for Plaintiff/Appellant, LITTLE ORBIT LLC

# INDEX TO APPENDIX
## Vol. III

**DOCUMENT**

19.   DEFENDANTS' ORIGINAL ANSWER AND DEFENSES TO
      PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR
      JURY TRIAL                                      3 / Doc No. 32

20.   FIRST AMENDED COMPLAINT                        32 / Doc No. 28

21.   Docket Report                                              51

NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

MICHAEL C. WHITTICAR *(admitted pro hac vice)*
mikew@novaiplaw.com
**NOVA IP LAW, PLLC**
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Telephone: (571) 386-2980
Facsimile: (855) 295-0740

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, <br><br> Defendants. | Case No. 8:20-cv-00089-DOC-JDE <br><br> **DEFENDANTS' ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **JURY TRIAL DEMANDED** <br><br> Judge: Hon. David O. Carter <br><br> Complaint Filed: 1/16/2020 |

Defendants Descendent Studios Inc. and Eric Peterson (collectively the "Defendants"), by the undersigned counsel, hereby submit their original answer and defenses to the First Amended Complaint ("Complaint") filed by Plaintiff Little Orbit LLC.

1.    Admitted only that the amount in controversy exceeds $75,000, exclusive of interests and costs. Otherwise, denied. Denied that Plaintiff has adequately or sufficiently pled subject matter jurisdiction.

2.    Denied.

3.    The first sentence of Paragraph 3 is admitted.   However, the citizenship of Plaintiff and the citizenship of Plaintiff's members has not been properly pled as required to support diversity jurisdiction.   Denied that Plaintiff itself creates or develops electronic games, as it appears to be primarily involved in misappropriating the development efforts of others without paying for them. Admitted only that Plaintiff attempts to advertise, market and sell electronic games which it has misappropriated from others without paying for them.

4.    Admitted.

5.    Admitted.  However, Mr. Peterson was not a party to the parties' written agreements.

6.    Admitted only that Plaintiff attempts to advertise, market and sell bargain-basement "shovelware" electronic games which it has misappropriated from others without paying for them.  Denied that Plaintiff develops or publishes AAA games.  Otherwise, denied.

7.    Admitted only that Interplay did release "Descent", the first truly 3D "first-person shooter" (FPS) game and the first "six degrees of freedom" (6DoF) FPS game. However, Defendants note that Descent was originally released in "shareware" form in 1994. 1995 was the year in which the retail copies were made available in stores. The Defendants note this because the Plaintiff's lack of

familiarity with either the original games or Descendent Studios' reboot was a common problem during the term of the Plaintiff's relationship with the Defendants.  Otherwise, denied.

8.    Admitted only that the first two Descent games released by Interplay were commercial and critical successes by the standards of the time. However, it is worth noting that while they were well-reviewed by comparison to Doom, they did not achieve the same level of commercial success as the latter because of Descent's more difficult gameplay and more demanding computer system hardware requirements.  Otherwise, denied.

9.    Admitted only that Descendent Studios was formed in November 2014 by current game developers who had formerly worked on Star Citizen.  Otherwise, denied.  Plaintiff's wording here is misleading. The developers who formed Descendent Studios were not "former game developers;" rather, the founding members of the studio were all experienced, current developers who had most recently chosen to leave the Star Citizen project rather than relocate to another city.

10.    Admitted.   However, Mr. Peterson is not a party to the relevant agreements.

11.    Admitted.

12.    Admitted.  However, the amount received by Descendent Studios after Kickstarter fees was substantially less than $600,000.

13.    Denied as stated.   Descendent Studios wanted Plaintiff to fund the PC and console ports and publish all three or four versions (XBOX1, PlayStation 4, Nintendo Switch and PC versions) at the same time.   However, the original Development Agreement referenced only the development of a single-player PC game, and XBOX1 and PS4.   Otherwise, denied.

14.    Admitted.

15.    Denied.  To the contrary, Defendants stressed the need to conduct a substantial marketing and advertising campaign to introduce the title and the game to newer, younger audiences.

16.    Admitted only that the referenced document was signed by Descendent and is the best evidence  of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff did not execute the agreement and deliver the needed development funds until October of 2017.    This created a one-month delay in the development timeline attributable solely to Plaintiff. Mr. Peterson was not a party nor a signatory.

17.    Admitted only that the referenced document was signed by Descendent and is the best evidence  of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff did not execute the agreement and deliver the needed development funds until October of 2017.    This created a one-month delay in the development timeline attributable solely to Plaintiff. Mr. Peterson was not a party nor a signatory.

18.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to modification through the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Mr. Peterson was not a party nor a signatory.

19.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.    In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.  Mr. Peterson was not a party nor a signatory.

20.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.    In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.  Mr. Peterson was not a party nor a signatory.

21.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month

development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Mr. Peterson was not a party nor a signatory.

22.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

23.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month

development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

24.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

25.   Denied.  In fact, Plaintiff falsely promised but then failed to engage 47 Studios to market the game.  The delays were caused by Plaintiff imposing many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet

Addendum.  In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the additional application program interface ("API") demanded by Plaintiff. Plaintiff had assumed this responsibility  due to its own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.

26.    Admitted only that the Terms Sheet Addendum was signed.   Denied that it resulted from delays by Defendants.  To the contrary, the Terms Sheet Addendum resulted from Plaintiff failing to pay vendors involved in the game console adaptation process, including Torus and Boombox, and from Plaintiff's own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.   In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the new API which Plaintiff had demanded and assumed the responsibility for developing. Mr. Peterson was not a party nor a signatory.

27.    Admitted only that the Terms Sheet Addendum was signed.   Denied that it resulted from delays by Defendants. Otherwise, denied. To the contrary, the Terms Sheet Addendum resulted from Plaintiff failing to pay vendors involved in the game console adaptation process, including Torus and Boombox, and from Plaintiff's own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.   In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the new API which Plaintiff had demanded and assumed the responsibility for developing. Mr. Peterson was not a party nor a signatory.

28.    Denied.  This date was never agreed to by Defendants and is a complete fabrication by Plaintiff.  Notably, it appears nowhere in the Terms Sheet Addendum.  Defendants expressly declined to agree to any new due date until Plaintiff completed the development of a working, complete and fully functional

API, after Plaintiff had demanded a new, additional API and had agreed to develop it but failed to do so.  Mr. Peterson was not a party nor a signatory.

29.   Denied.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified through the parties' course of dealing by the Terms Sheet. Otherwise, denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  No new deadline was agreed to because Plaintiff never completed the new API which Plaintiff had demanded and agreed to develop but failed to  do so, preventing any new deadline from being established.

30.   Denied.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  No new deadline was agreed to because Plaintiff never completed the new API which Plaintiff had demanded and agreed to develop but failed to  do so, preventing any new deadline from being established.  The few changes made by Defendants were either required by pending

legal and regulatory changes or due to changing market conditions creating new and different "best practices."

31.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and Plaintiff continued to withhold key performance and impose new and additional requirements that created additional delays and cost over-runs, without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating.

32.    Admitted only that the license agreement was permitted to expire due to interference from Plaintiff and Matthew Scott after they breached and repudiated the Terms Sheet Addendum by stopping payments, failing in their own development efforts, and continuing to impose new and additional requirements that created additional delays and cost overruns.

33.    Denied and baseless.  Defendants had plenty of staff and resources to perform the original scope of the development effort.  The delays and overruns were created by Plaintiff signing and funding late, failing in its own development efforts, and continuing to impose new, additional and conflicting requirements that created additional delays and cost overruns.

34.    Denied and baseless.  One CTO left due to Plaintiff's delay in signing and funding the Development Agreement.  He was quickly replaced with an equally competent and skilled CTO.

35.    Denied.  The game had high online approval ratings for over 3 years (70% mostly positive or better) until they were undermined by the delays caused by Plaintiff imposing new requirements beyond the original specifications and delaying its own development efforts.

36.     Denied and frivolous.   Plaintiff was expressly informed that Defendants could not commit to a deadline while the new API which Plaintiff had demanded and agreed to develop but failed to develop remained incomplete and while Plaintiff kept imposing new, additional and conflicting demands and requirements.

37.     Denied.  Plaintiff did very little to advertise or market the game despite its false and unfulfilled promise to employ 47 Studios to market it.   What little advertising Plaintiff did conduct was riddled with errors and false advertising because Plaintiff was too cheap to pay its employees to read and learn about the game.

38.     Admitted only that there was some public discussion on message boards and bulletin boards and the like.  This was a positive occurrence which any competing publisher would have promoted and engaged with as free advertising.  Denied that the discussion was the result of any delays or breaches caused by Defendants.  The delays and overruns were created by Plaintiff signing and funding late, failing in its own API development efforts, and continuing to impose new, additional and conflicting requirements that created additional delays and cost overruns. Otherwise, denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Admitted only that Peterson in the scope of his employment on behalf of Descendent made comments in a testing forum to defend Descendent to interested parties with a need to know, many or most of whom were under nondisclosure agreements.   Denied that any of these statements were false.  Otherwise, denied.

43.     Defendants incorporate by reference their answers to all prior Paragraphs of Plaintiff's Complaint as though fully set forth herein.

44.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the new API development and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date. Mr. Peterson was not a party nor a signatory.

45.     Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing

the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

46.   Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

47.   Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which it had demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it

impossible for Defendants to agree to or set a firm completion date.  Because Plaintiff never completed the additional API which it had demanded and agreed but failed to develop and never paid the additional agreed upon $660,000, Defendants would not and could not agree to a firm completion date.  Note that no new completion date appears or is stated in the Terms Sheet Addendum.  Rather, it required Plaintiff to continue funding through December 2019.

48.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and also continued to withhold key performance and to impose new and additional requirements that created additional delays and cost over-runs without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating. In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

49.    Denied.  The statements were not made to the public and were truthful.  Moreover, Defendants had been discharged of their obligations by Plaintiff's prior material breaches, anticipatory repudiation and fraud in the inducement.

50.    Denied.  Plaintiff committed the first and prior material breaches by not paying $660,000 due under the Terms Sheet Addendum, by failing to complete the additional API which Plaintiff had demanded and agreed to develop but then failed to develop, and by demanding that Defendants meet additional and conflicting requirements that were material changes to the Agreement and specifications without allotting sufficient additional time and without paying the promised additional money.   In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

51.   Denied.  To the contrary, Defendants have been injured in the amount of at least $5,660,000 by Plaintiff's failure to make required payments, wrongful termination, and failure to complete the additional API and other development projects that Plaintiff had agreed to complete but failed to complete.

52.   Defendants incorporate by reference their answers to Paragraphs 1 through 51 of Plaintiff's Complaint as though fully set forth herein.

53.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium the alleged representation supposedly was made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 53 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

54.   Denied.  Plaintiff continued to pay Defendants because Plaintiff was constantly imposing new and conflicting demands and requirements beyond the scope of the Agreement and specifications, because Plaintiff had never finished the additional API which Plaintiff had demanded and agreed to develop but failed to develop, and because Plaintiff knew that Defendants had already created and published a successful and highly-rated multi-player related game.

55.   Denied.  To the contrary, Plaintiff refused to show cost data to Defendants for either development work or alleged marketing costs, because Plaintiff was not really making any sincere effort to either market or develop the game.  In addition, two console support vendors, Torus and Boombox, quit the

project because Plaintiff failed to pay them money that it owed them.  Failing to pay vendors and making them quit is one way that Plaintiff created even more cost increases and delays.

56.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 56 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

57.   Denied.  Defendants did have sufficient staff, skills and resources for the original PC game development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

58.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.   It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.   Therefore, the allegations set forth in Paragraph 58 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.   However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game

that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

59.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.  It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 59 are denied for lack of sufficient knowledge and information are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

60.   Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and Plaintiff continued to withhold key performance and impose new and additional requirements that created additional delays and cost over-runs, without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating.   In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

61.   Defendants incorporate by reference their answers to Paragraphs 1 through 60 to Plaintiff's Complaint as though fully set forth herein.

62.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged representations supposedly was

1    made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already

2    tenuous breach of contract claim into an even more tenuous tort claim.  Therefore,

3    the allegations set forth in Paragraph 62 are denied for lack of sufficient knowledge

4    and information and are objected to as being insufficiently specific.  However,

5    Defendants did have sufficient staff, funding and resources for the original

6    development scope set forth in the Agreement, as evidenced by the successful and

7    highly-rated multi-player game that Defendants made available approximately five

8    months after the Kickstarter campaign had concluded. Otherwise, denied.

9         63.    Defendants are unable to answer this Paragraph because, in violation of

10   Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in

11   what medium each of the alleged promises or representations supposedly was

12   made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already

13   tenuous breach of contract claim into an even more tenuous tort claim.  Therefore,

14   the allegations set forth in Paragraph 63 are denied for lack of sufficient knowledge

15   and information and are objected to as being insufficiently specific.  However,

16   Defendants did have sufficient staff, funding and resources for the original

17   development scope set forth in the Agreement, as evidenced by the successful and

18   highly-rated multi-player game that Defendants made available approximately five

19   months after the Kickstarter campaign had concluded. Otherwise, denied.

20        64.    Defendants are unable to answer this Paragraph because, in violation of

21   Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in

22   what medium each of the separate alleged promises or representations supposedly

23   was made.  It appears to be merely a poorly pled attempt to convert Plaintiff's

24   already tenuous breach of contract claim into an even more tenuous tort claim.

25   Therefore, the allegations set forth in Paragraph 64 are denied for lack of sufficient

26   knowledge and information and are objected to as being insufficiently specific.

27   However, Defendants did have sufficient staff, funding and resources for the

28

original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

65.   Denied.

66.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged promises and representations supposedly was made.   It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 66 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

67.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged promises or representations supposedly was made.   It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 67 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available

1    approximately five months after the Kickstarter campaign had concluded.

2    Otherwise, denied.

3         68.   Defendants are unable to answer this Paragraph because, in violation of

4    Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in

5    what medium each of the several separate alleged promises or representations

6    supposedly was made.   It appears to be merely a poorly-pled attempt to convert

7    Plaintiff's already tenuous breach of contract claim into an even more tenuous tort

8    claim.  Therefore, the allegations set forth in Paragraph 68 are denied for lack of

9    sufficient knowledge and information and are objected to as being insufficiently

10   specific.  However, Defendants did have sufficient staff, funding and resources for

11   the original development scope set forth in the Agreement, as evidenced by the

12   successful and highly-rated multi-player game that Defendants made available

13   approximately five months after the Kickstarter campaign had concluded.

14   Otherwise, denied.

15        69.   Denied.  To the contrary, Defendants have been injured in the amount

16   of at least $5,660,000 by Plaintiff's failure to make required payments, wrongful

17   termination, and failure to complete the additional API and other development

18   projects that Plaintiff had agreed to complete but failed to complete. Any damages

19   or injury incurred by the parties were due Plaintiff's breaches of the Agreements,

20   failure to continue funding, and failing to fulfill its own development, marketing

21   and funding obligations.

22        70.   Defendants incorporate by reference theirs answers to Paragraphs 1

23   through 69 to Plaintiff's Complaint as though fully set forth herein.

24        71.   Denied.  All of the cited statements were true.  Many of them were also

25   simply opinions.

26

27

28

72.     Denied. Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

73.     Denied. All of the cited statements were true. Many of them were also simply opinions.

74.     Denied. All of the cited statements were true. Many of them were also simply opinions.

75.     Denied. All of the cited statements were true. Many of them were also simply opinions.

76.     Denied. Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

77.     Denied. Any damages or losses incurred by Plaintiff are the direct and proximate result of its own fraudulent inducement, wrongful termination, prior material breaches, and wrongful anticipatory repudiation of the Development Agreement and the Terms Sheet Addendum, including breach of Plaintiff's marketing, funding and development obligations.

78.     Defendants incorporate by reference their answers to Paragraphs 1-74 to Plaintiff's Complaint as though fully set forth herein.

79.     Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

80.   Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

81.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

82.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

83.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.  Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

**Defenses and Affirmative Defenses**

**First Affirmative Defense**

**(Improper Venue and Lack of Personal Jurisdiction, Especially Over Eric Peterson)**

This court lacks personal jurisdiction over Eric Peterson and venue here is improper over Mr. Peterson.   Mr. Peterson was not a party to any of the parties' contracts and never visited or went to California in connection with the parties' relationship.

**Second Affirmative Defense**

**(Anticipatory Repudiation and Prior Material Breach)**

As described in more detail in the accompanying counterclaim, Plaintiff committed anticipatory repudiations and prior material breaches which discharged Defendants of any obligations under the contracts.  Among these prior material breaches and repudiations were: (1) Plaintiff not putting out the promised marketing spend and efforts with 47 Studios; (2) not paying eleven required installments of $60,000 due under the Terms Sheet Addendum; (3) demanding additional budget-busting, delay-creating work-product and development efforts without paying for them nor allotting sufficient time for their completion; (4) agreeing to develop but failing to develop the additional API demanded by Plaintiff; (5) failing to pay console vendors, including Torus and Boombox, forcing Torus to quit the project in November of 2018; (6) switching engine versions from v. 4.19 to v. 4.20; (7) changing the user interface ("UI") back and forth at least four times; (8) adding new consoles, including the lower-end technology Nintendo Switch,  that required more modifications and adaptations; (9) failing to document and account for and share documentation of expenses paid by Plaintiff; (10) not providing quarterly statements or any statements about presales; and, (11) not

providing any royalty accounting(s) after the wrongful purported termination of the agreement.

### Third Affirmative Defense
### (Wrongful Termination)

Plaintiff wrongfully purported to terminate the Development Agreement and the Terms Sheet Addendum in breach thereof due to delays and cost overruns caused by its own breaches, failures to make necessary payments for which it was responsible, breach of its agreement to develop the additional API, and imposition of extra-contractual changes and requirements.

### Fourth Affirmative Defense
### (Fraud In the Inducement)

Plaintiff induced the Development Agreement and the Terms Sheet Addendum by Matthew Scott falsely representing and claiming that Plaintiff had the contacts and funds to fund the development project and to advertise the game through 47 Studios.   In fact, all of those representations and claims were false and untrue, and Plaintiff had to borrow over $ 1 million to fund the game development project and did not advertise or promote the game through the represented 47 Studios.

### Fifth Affirmative Defense
### (Truth)

To the extent the statements challenged as libelous or defamatory are facts rather than opinions, they true and correct.

Sixth Affirmative Defense
### (Opinion)

The statements challenged as libelous or defamatory are opinions rather than statements of fact.

**Seventh Affirmative Defense**

**(Privilege)**

The statements challenged as libelous or defamatory are and were privileged as they were made in a private forum to interested persons with a right to know and an interest in the subject matter and possibly to correct false statements and misrepresentations previously made by Plaintiff about the same subject matter.  In addition, many or most of the recipients of the challenged statements were bound by non-disclosure agreements.

**Eighth Affirmative Defense**

**(Failure To Plead or Perform Satisfaction of Conditions Precedent)**

The approval of Interplay was an express condition precedent to Defendants' obligation to assign the trademark license under Paragraph 9 of the Terms Sheet Addendum.   Plaintiff fails to allege that any such approval was ever sought or obtained.

Under Paragraph 4 of the Terms Sheet Addendum, Plaintiff had the right to purchase the Game-related IP and work-product by paying $1 million.   Plaintiff fails to allege that any such payment was ever made.

**Ninth Affirmative Defense**

**(Failure To Plead Fraud or Negligent Representation With Particularity As Required By Rule 9(b))**

Plaintiff has utterly failed to plead fraud or negligent misrepresentations consistent with the particularity requirements of Fed. R. Civ. P. 9(b).  Plaintiff fails to specify when, where, to whom, and by what medium any of the alleged misrepresentations were made.

**<u>Tenth Affirmative Defense</u>**

**<u>(Economic Loss and Source or Duty Rule)</u>**

Plaintiff's fraud and negligent misrepresentation claims are barred by the economic loss rule and the gist of the action doctrine in that they merely attempt to re-characterize and mis-characterize contractual promises and warranties as tort claims and duties.

**<u>Eleventh Affirmative Defense</u>**

**<u>(Declaratory Judgment Inappropriate)</u>**

Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

**<u>Twelfth Affirmative Defense</u>**

**<u>(Failure to State A Claim)</u>**

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted, for reasons including but not limited to those set forth in Defendants' motion to dismiss and the supporting memorandum.

**<u>Thirteenth Affirmative Defense</u>**

**<u>(Anti-SLAPP Violation)</u>**

Plaintiff's First Amended Complaint, especially the trade libel claim, violates the California Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16) and is therefore barred and subject to a special motion to strike.  In addition, Plaintiff is liable for Defendants' attorneys' fees, costs and expenses.

**<u>Fourteenth Affirmative Defense</u>**

**<u>(Additional Defenses)</u>**

Defendants hereby give notice that they intend to rely upon any additional defenses that become available or apparent during discovery and thus reserve the right to amend their Answer to assert such additional defenses.

WHEREFORE, Defendants pray for judgment on Plaintiff's Complaint as follows:

1. Plaintiff takes nothing by way of its Complaint;

2. That Defendants be awarded judgment in their favor in this action;

3. Defendants are entitled to recover their attorneys' fees from Plaintiff pursuant to the California Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16), and as otherwise may be provided for by contract, law or statute; and

4. For such other and further relief as the Court may deem just and proper.

Dated: June 4, 2020

Respectfully submitted,

By: _____
Counsel

Nada I. Shamonki (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel: 571-386-2980
Fax: 855-295-0740
E-mail: mikew@novaiplaw.com

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

27

# DEMAND FOR JURY TRIAL

Defendant Descendent Studios Inc. and Eric Peterson hereby demand trial by jury.

Dated: June 4, 2020

Respectfully submitted,

By: _____
        Counsel

Nada I. Shamonki (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:  571-386-2980
Fax:  855-295-0740
E-mail: mikew@novaiplaw.com

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On, June 4, 2020, I filed a copy of the following document(s):

**DEFENDANTS' ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com

Executed on June 4, 2020, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto
Diane Hashimoto

M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LEO E. LUNDBERG, JR. (State Bar No. 125951)
leo.law.55@gmail.com
LAW OFFICE OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101

***Attorneys for Plaintiff,***
LITTLE ORBIT LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company, | Case No.: 8:20-cv-00089-DOC-JDE |
| Plaintiff, | Judge: Hon. David O. Carter |
| v. | **FIRST AMENDED COMPLAINT FOR:** |
| DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, | 1. **BREACH OF CONTRACT;**<br>2. **NEGLIGENT MISREPRESENTATION;**<br>3. **FRAUD;**<br>4. **TRADE LIBEL/COMMERCIAL DISPARAGEMENT; AND**<br>5. **DECLARATORY RELIEF** |
| Defendants. | |
| DESCENDENT STUDIOS INC., a Texas corporation, | |
| Counterclaimant, | |
| vs. | |
| LITTLE ORBIT LLC, a California Limited Liability Company, | |
| Counter Defendant. | |

1

Plaintiff Little Orbit LLC, by and through its undersigned counsel, hereby brings this First Amended Complaint against Defendants Descendent Studios Inc. and Eric Peterson and in support thereof alleges the following:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 given that this matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Little Orbit LLC ("Little Orbit") is a limited liability company organized under the laws of the State of California, with its principal place of business in Rancho Santa Margarita, California.  The Members of Little Orbit are (a) Matthew Paul Scott, who is a resident of Laguna Beach, California; and (b) Wilbur Quon, who is a resident of Tustin, California.  Little Orbit is engaged in the business of creating, developing, publishing, advertising, marketing and selling of electronic games.

4.      Defendant Descendent Studios Inc. ("Descendent Studios") is a corporation organized under the laws of the State of Texas, with its principal place of business in Austin, Texas.  Descendent is or was engaged in the business of developing electronic games.

5.      Defendant Eric Peterson ("Peterson") is an individual who is a resident of Austin, Texas.  Peterson, at all times relevant herein, was the CEO of Defendant Descendent Studios and was the primary point person in dealing with Little Orbit.

## FACTUAL ALLEGATIONS

### Little Orbit

6.      Plaintiff Little Orbit is a worldwide video game developer and publisher formed in January 2010 with a focus on AAA licensed-based entertainment products.  Little Orbit has developed and published games on all relevant gaming platforms and continues to pioneer electronic entertainment for consumers of all ages.  Over 20 games have been published by Little

2

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

Orbit including "Kung Fu Panda: Showdown of Legendary Legends", "Adventure Time: Finn and Jake Investigations", "Young Justice", "Falling Skies the Game", "APB Reloaded," and "Fallen Earth."

## **The Descent Game**

7.     In 1995 Interplay Productions Corp., a major video game developer and publisher, released a game known as Descent, a first-person shooter ("FPS") game developed by Parallax Software.  Descent popularized a subgenre of FPS games using the "six degrees of freedom" which is the movement of a rigid body (the game player's avatar) in three-dimensional space in six different ways: forward/back, up/down, left/right, yaw, pitch, roll. Descent was also the first FPS to entirely feature 3D graphics.

8.     Descent was a commercial success, selling over 1.1 million units, together with its sequel, Descent II, as of 1998.  Descent also received great acclaim in the gaming industry with commentators and reviewers comparing it to Doom, a previous gaming title which was widely praised in the gaming press as one of the most important and influential titles in gaming history. In particular, Descent was praised for its unrestrained range of motion and full 3D graphics.  The combination of traditional first-person shooter gameplay with that of a space flight simulator was also very popular with consumers.  Descent's success resulted in the creation of expansion packs and the sequels Descent II (1996) and Descent 3 (1999).

## **Descendent Studios**

9.     In or around November of 2014, several former game developers working on a game known as Star Citizen, including Defendant Peterson, announced that they were forming Descendent Studios to work on a game similar to Descent in play style, with the working title "Ships That Fight Underground."

10.     Peterson became the Chief Executive Officer of Descendent Studios and served in that capacity during all times material to this action.

11.     On information and belief, in or around March of 2015 Descendent entered into a licensing agreement with Interplay to license the Descent name to Descendent Studios for the new

game that Descendent was developing. Based on this license, the name of the game being developed by Descendent Studios was changed to "Descent: Underground."

12. Based on the popularity of the Descent game among fans, Descendent Studios was able to raise funds for the development of Descent: Underground through a Kickstarter campaign which, on information and belief, raised over $600,000.

## The Agreement Between Little Orbit and Descendent Studios

13. In or around August of 2017 Little Orbit was approached by Descendent Studios about providing the financial support necessary to complete the development of the Descent game in return for which Little Orbit would publish the Descent: Underground game subject to the payment and royalty terms agreed upon between the parties.

14. Descendent Studios represented that it was "developing a reboot of the Descent franchise using modern, high-fidelity game systems."

15. Descendent Studios further represented and acknowledged that "Descent was one of the most iconic and revolutionary game franchises of the 1990s and the name has considerable brand awareness."

16. The parties' discussions culminated in Little Orbit and Descendent Studios entering into a "Development Agreement" effective September 1, 2017 (the "Agreement"), under which Little Orbit contracted with Descendent Studios to develop the Descent: Underground game (the "Game") which Little Orbit would publish.

17. Based on the representations and assurances by Descendent Studios made during the parties' discussions during the months of August and September of 2017, Little Orbit agreed to publish the game as described:

> Descent: Underground invites players to pilot spacecraft fighting for resources and fame inside hazardous asteroid mines. It melds the full movement freedom of the originals with modern role-play based team play, compelling story, and exciting improvements in graphics, artificial intelligence, meta-game, e-sports, and virtual reality!

4

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

### Defendants' Express Representations Related to the Game

18.     In an effort to induce Little Orbit into entering into the Agreement, Defendants expressly represented during the parties' discussions during the months of August and September, 2017, that Descendent was capable of developing the Game which, at all times, would be in conformity with common and accepted industry standards, including the use of modern, high-fidelity game systems," and would satisfy general standards of quality to be expected from a developer of electronic games as well as the specific specifications in the Agreement.

19.     As confirmed by the Development Agreement, Descendent Studios made the following express representations:

     a)  "11.1.2  [Developer] shall Develop the Game in a good and workmanlike manner and to the standards of a high quality game developer and the Game shall be of sound workmanship, satisfactory quality and free of Defects;"

     b)  "11.1.3   Developer has employed and will continue to employ for the entire development of each Game, an adequate development team. Such development team shall be of the minimum number and skill level of a first class developer. Further, as set forth on Schedule 4, attached hereto and incorporated herein, such development team members shall be exclusively dedicated to development of such Game for the periods specified therein. In the event that a majority of the development team currently employed by Developer and assigned to any Game as set forth on Schedule 4 leaves, terminates or in any other manner ends their employee relationship with Developer, Developer shall promptly give Publisher written notice thereof;"

     c)  "11.1.4  Developer has sufficient personnel and resources to complete the Game in a timely manner;"

     d)  "11.1.5. The Game will operate substantially in accordance with the Specification when Published and be capable of the standards of performance set out in the Specification;"

e) "11.1.6. The Game and all Publishing and use of it will not infringe the Intellectual Property Rights of any third party and nor give rise to any liability to any third party;"

f) "11.1.7. Developer is responsible for acquiring all rights necessary for the supply of the Game on the terms of this Agreement, including without limitation the rights to use the Unreal Engine, the Descent name, and all of Developer's proprietary code without violating any Intellectual Property Rights of any third party. For the purpose of clarity Developer is liable for all licensing fees regardless of total cost."

g) "11.1.8. [Developer] has not disposed of any right, title or interest in or to the Game or Intellectual Property Rights in it, or otherwise dealt with the same in any way that is inconsistent with the terms of this Agreement;"

h) "11.1.9. [Developer] will not challenge the Intellectual Property Rights or rights of use of Publisher in the Game and will not do any act which may undermine, prejudice or invalidate any such rights;"

i) "11.1.10. The Game will not contain any content or material which is technically harmful, such as computer viruses, worms, logic bombs or other malicious software or harmful data, or is defamatory, untrue, discriminatory, obscene, inflammatory, racist, sexually explicit, or otherwise is unlawful or which gives rise to civil or criminal liability;"

20. Peterson was the point person in making the above representations to Little Orbit and it was based on Peterson's and Descendent's representations over the course of the parties' discussions in negotiating the Agreement in August and September of 2017 that the foregoing representations were included in the Development Agreement.

21. Pursuant to Schedule 2 of the Agreement the parties also expressly agreed to and set out the scope of what Defendants were required to deliver pursuant to the Agreement, as well as in the Game Design Document that Defendants later provided to Little Orbit which was mutually agreed to, and in the GAMESTORM scope that was also agreed to and paid for by Little Orbit. Combined, the foregoing documents expressly set out the scope for the completed game

and Defendants commitments regarding same. In spite of being provided no less than nine (9) extra months and being paid far more than the initial agreed price, Defendants failed to deliver the required scope of game items.

22. Pursuant to Schedule 3 to the Development Agreement, Descendent Studios agreed to a "Milestone and Payment Schedule" which provided "Publisher will pay to Developer an aggregate of $500,000 on the dates and following the completion of the Milestones described in the attached Development Milestones spreadsheet."

23. The Milestone and Payment Schedule provided for 7 different milestones and delivery dates culminating with "Milestone 7 May 15, 2018 Release Candidate PC $75,000."

## The "Terms Agreement"

24. The Game was initially planned for a May 2018 retail release date. When it became clear from Descendent's slow and problematic progress that deadline would not be met, the release date for the Game was pushed back to a November 2018 release date. Further delays required the release date for the Game to be pushed back a final time to a February 2019 release date.

25. Based on Defendants' repeated representations and promises, Little Orbit had advertised and promoted, first, the May 2018 release date and then later the November 2018 release date to the trade, the gaming industry and consumers. Missing these dates, especially the November 2018 release date, meant not having the Game ready in time for the 2018 holiday shopping season, which represents a huge loss financially, as well as a great set-back for the Game and Little Orbit in public perception.

26. As a result of Descendent's repeated failures to meet the agreed upon delivery dates, the parties discussed ways for Descendent to still be able to deliver the Game. Those discussions culminated in the Parties agreeing to a "Terms Sheet" dated November 28, 2018.

27. Pursuant to the Terms Sheet, Little Orbit committed to continue funding Descendent's monthly payroll in the amount of $60,000 per month "in return for services and deliverables by Descendent in connection with the Game…so long as such services and

7

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

deliverables are provided in a timely manner and provided Descendent does not materially breach its obligations in providing such services and deliverables."

28.    The Parties also agreed on a new extended delivery date for the final PC Version of the game of January 25, 2019 in order to release the game in February.  Descendent failed to meet the extended delivery date given the deliverable actually provided by Descendent on January 25, 2019 was rejected as the Final PC Version, having failed to meet the definition of "Final Version" in the Original Agreement.

29.    The deadline for the Final PC Version was set in the Development Agreement and Descendent missed the deadline. Numerous extensions for delivering the Final PC Version were established, but Descendent failed to meet each extension.

30.    Descendent also failed to meet the required specifications according to Schedule 2 in the Agreement and the Game Design Document they submitted. As a result, Little Orbit was compelled to, at great additional expense, engage additional resources to assist, and in many cases take over, certain aspects of the development of the Game due to Descendent's poor performance and inability to provide services as a "first class developer" as agreed in Section 11.1.3 of the Development Agreement.

31.    Descendent also failed to provide the assignment of the Trademark License Agreement dated March 5, 2016, by and between Interplay Entertainment Corp. and Descendent as required under Section 9 of the Terms Sheet Amendment.

32.    Little Orbit is informed and believes, and on that basis alleges, that Interplay has since cancelled its license of the Descent trademark to Descendent.  That means Little Orbit has now lost the rights to this valuable trademark as a result of Descendent's repeated breaches of the Agreement and Terms Sheet.  The loss of the Descent trademark also further devalues what work has been done to develop the Game.

//

//

//

## Defendants' Fraud and Material Breaches in Developing the Game

33.     Upon information and belief, contrary to Defendants' representations, Descendent did not have "sufficient personnel and resources to complete the Game in a timely manner."

34.     Upon information and belief, contrary to Defendants' representations and commitment regarding the participation of key development personnel in the development of the game, certain key personnel left Descendent's employ either before or during production and were not replaced by equally competent personnel which created problems in completing the scope of game required by the parties' agreements.

35.     Upon information and belief, contrary to Defendants' representations, Descendent was incapable of delivering a Game meeting Specifications agreed to between the Parties.

36.     Upon information and belief, Descendent and Peterson fraudulently induced Little Orbit to commit to fund Descendent's payroll as part of the Terms Sheet Amendment with no actual intent or desire to provide concrete deliverables on specific dates, including a delivery date for the Final PC Version.

37.     Upon information and belief, Descendent and Peterson purposefully made the false and fraudulent representations addressed herein with the express purpose of inducing Little Orbit to enter into the Development Agreement and later the Terms Sheet and to pay substantial sums to Descendent and others knowing the false and fraudulent representations would be acted upon by Little Orbit within this Judicial District and would cause harm to Little Orbit within this Judicial District.

## Defendants' Disparaging Statements

38.     Upon information and belief, based on the efforts of Little Orbit to promote the upcoming release of the Game, as well as Defendants' previous efforts, there was great anticipation in the gaming community for the release of the Game.

39.     The repeated delays caused by Defendants' delays and ultimate failure to deliver a product meeting the agreed scope of the Game, resulted in the Game not being delivered as repeatedly promised which created curiosity in the gaming community as to what happened.  As

9

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

a result, there was discussion among members of the gaming community on message boards and gaming communities regarding same.

40.     On information and belief, Peterson, acting on his own behalf as well as in his capacity as the CEO of Descendent, made multiple false and disparaging statements about Little Orbit to the gaming community in an effort to cover up Defendants' failures and inability to meet the agreed scope and to cast blame for the failure of the Game to be published on Little Orbit.

41.     Upon information and belief, Defendants' false statements disparaging Plaintiff have been copied and repeated/re-posted by others thereby expanding the spread of such false and disparaging statements.

42.     Upon information and belief, Defendants' false statements disparaging Plaintiff include, but are not limited to, the following:

- Folks that say [Descendent] scammed are WAY off base, we worked for nothing, this is a publisher [Little Orbit] holding it hostage trying to get the rights from us, which we have even offered but not for free;

- it is our belief that they [Little Orbit] can't afford the marketing or console publishing and have parked it;

- we had good progress then they [Little Orbit] breached and are trying to snag the IP we own;

- they [Little Orbit] didn't market the game, they didn't properly test it, they constantly asked for changes - they didn't understand the project or market - they were trying to get it into Walmart instead of focusing on digital - so many ways they breached.....and finally they were unable to pay. We had to hold their hands so often on small things - they commissioned a video - for marketing, it was so unassociated with the game we had to rewrite the storyline, and manage new shots just to make it tie in;

- Little Orbit wanting to go full Arcade in January, was typical, they were getting builds for months and then decided to PIVOT based upon the lack of sales for Overload - and that the name Descent did not mean anything in the industry anymore

10

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

and that they would still need to spend on Marketing. The change in direction was typical of them, and they [Little Orbit] have a history of pulling stunts late to try to stiff devs [developers];

- Essentially they are trying to run us out of biz and take over the IP;

- we have offered to let them [Little Orbit] buy us out - they don't have the $$$, so consider that..if they can't even buy us out, how are they going to market, publish or finish the game? EXACTLY, they aren't.....so, here we are at an impasse - and those saying they fired us on Steam are way off base, you can't FIRE the IP holder - they just stopped paying, and breached their obligations hoping we would fold and give them everything and then trust them to share;

- We are here because of their [Little Orbit] decisions. They wanted a SAAS model, they needed our assistance on console, even though we were only contracted originally for the PC, they lost a console partner and a 2nd console team, they asked for a new ui like 4 times, they offered to do said UI then left it on us, they never tested properly, never marketed, and asked us to change to their completely new API in Decemberish;

- I mean as owner of the IP we wanted it as good as it could be and figured all of these changes they understood the impact to the schedule. Clearly they did not, they would just yell at us and tell us to work 7 days a week. Then we researched their [Little Orbit] history and found a pattern of behavior as projects ran into trouble;

- Too many times I have seen publishers kill a game late, take it to market without the original devs, and pocket all the money......right is right - If someone [Little Orbit] doesn't honor a contract signed recently, why would anyone trust they would honor one in the future?  Once you start digging into some people's past and find similar situations and talk to others that have dealt with folks it clarifies a lot;

//
//
//

## COUNT I
### (Breach of Contract)

43.     Plaintiff Little Orbit repeats and re-alleges Paragraphs 1 through 42 above as if fully set forth herein.

44.     As set forth above, Little Orbit and Descendent Studios entered into the Development Agreement whereby Descendent Studios agreed to timely develop the Game in accordance with the specifications contained in the Development Agreement, in the Game Design Document and in the GAMESTORM.

45.     Descendent Studios breached the Development Agreement by not meeting the milestones in a timely manner and also by not meeting the specifications required by the parties' agreements as to the scope of the Game.

46.     Descendent Studios further breached the Development Agreement by failing to deliver the completed Game.

47.     Descendent Studios breached the Development Agreement and the Terms Sheet by not meeting extended deadlines in a timely manner and also by not meeting the specifications required by the parties' agreements as to the scope of the Game.

48.     Descendent also failed to provide the assignment of the Trademark License Agreement dated March 5, 2016, by and between Interplay Entertainment Corp. and Descendent as required under Section 9 of the Terms Sheet Amendment.

49.     Descendent also violated Section 9 of the Agreement by making the above quoted statements to the public.

50.     Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Terms Sheet.

51.     Little Orbit has been damaged as a result of Defendants' breach of contract in an amount which has not yet been ascertained but which is not less than $2,000,000.00 to be proven

at trial. Little Orbit has also suffered damages in the form of reasonably anticipated lost profits from the sale and/or licensing of the Game in excess of $5,000,000.

## COUNT II
### (Negligent Misrepresentation)

52. Plaintiff Little Orbit repeats and re-alleges Paragraphs 1 through 51 as if fully set forth herein.

53. In an effort to induce Little Orbit to enter into the Development Agreement, Peterson, Descendent Studios' CEO, expressly represented that Descendent Studios was capable of developing the Game and had a sufficient staff for doing so.

54. Defendants' representations and promises in this regard were critical and were relied upon by Little Orbit in proceeding to enter into the Development Agreement and continuing to pay Descendent Studios.

55. Defendants were, at all times, well aware of the significant costs and expenses associated with Little Orbit's investment in the development of the Game both including the sums being paid to Descendent Studios as well as to third parties.

56. Defendants' representations related to, among other things, its ability to adhere to and fully comply with all industry standards as well as the express specifications in the Development Agreement as well as to meet the delivery schedule for the completed Game.

57. At the time Defendants made those representations they either knew the representations were not true or made those representations under circumstances in which they ought to have known of their falsity.

58. Little Orbit justifiably relied upon Defendants' material misrepresentations and assurances, as, at the time Defendants made such representations, Little Orbit did not know of the falsity of Defendants' representations.

59. In deciding to enter into the Agreement with Defendants with respect to the development of the Game, Little Orbit relied upon Defendants' representations.

60. As a direct and proximate result of Little Orbit's justifiable reliance upon Defendants' negligent misrepresentations, Little Orbit has suffered and will continue to suffer

13

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

significant harm and damages, including, but not limited to, substantial lost profits, special damages and consequential damages stemming from the total failure of Defendants to deliver the Game as promised. Defendants' negligent misrepresentations have caused damages in an amount which has not yet been ascertained but which is not less than the $2,000,000.00 Little Orbit invested in developing the Game pursuant to the Agreement and the Terms Sheet, in payments to Descendent as well as third parties, such amount to be proven at trial. Little Orbit has also suffered damages in the form of reasonably anticipated lost profits from the sale and/or licensing of the Game in excess of $5,000,000.

## COUNT III
### (Fraud)

61.     Plaintiff Little Orbit repeats and re-alleges Paragraphs 1 through 60 as if fully set forth herein.

62.     In and around August through September 2017, Peterson, to induce Little Orbit to enter into the Development Agreement, intentionally misrepresented by telephone, in person and in electronic mail messages to, among others, Matt Scott of Little Orbit, that Descendent Studios:

a. would deliver the Game in conformity with industry standards and customs and in conformity with the express specifications contained in the Development Agreement and the agreed upon scope of the Game;

b. was capable of manufacturing and delivering the Game completed and ready to ship for a promised original release date of May 2018;

c. had the key personnel with the appropriate skills and qualifications to deliver the Game in conformity with industry standards and customs and in conformity with the express specifications contained in the Development Agreement and the agreed upon scope of the Game;

63.     After failing to meet the original release date of May 2018 and then a second release date of November 2018, over the next year Defendants continued to promise to meet additional agreed dates and deliverable commitments but failed to do so.

64. For example, in and around October and November of 2018, Defendants represented Descendent:

    a. would be able to meet the extended delivery milestones so that the Game could be released in December of 2018.

    b. would be able to meet the further extended delivery milestones so that the Game could be released in February of 2019.

65. Descendent's repeated failures required Little Orbit to commit additional resources, in both internal as well as third party personnel, to try to assist Descendent and make up for its short comings. This resulted in Little Orbit having to invest additional funds over and above what was committed in the Agreement in an effort to complete the Game.

66. Defendants knew that Little Orbit was heavily relying upon Peterson and Descendent's repeated representations, as described above, in agreeing to enter into the Development Agreement and, then later, the Terms Sheet.

67. At the time Defendants made the foregoing material representations and promises to Little Orbit, Little Orbit is informed and believes that Defendants knew Descendent was incapable of fulfilling such commitments and/or had no intention of performing under the terms of the Development Agreement and Terms Sheet and such representations were false when made.

68. Little Orbit acted in justifiable reliance upon Defendants' material misrepresentations and assurances as, at the time Defendants' made such representations, Little Orbit did not know that such representations were false, and could not, in the exercise of reasonable diligence, have discovered that such representations were false when made.

69. As a direct and proximate result of Little Orbit's justifiable reliance upon Defendants' fraudulent misrepresentations, Little Orbit has suffered significant and extensive damages and financial injury which has not yet been ascertained but which is not less than the $2,000,000.00 Little Orbit invested in developing the Game pursuant to the Agreement and the Terms Sheet, in payments to Descendent as well as third parties, such amount to be proven at trial. Little Orbit has also suffered damages in the form of reasonably anticipated lost profits from the sale and/or licensing of the Game in excess of $5,000,000.

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

## COUNT IV

### (Trade Libel/Commercial Disparagement)

70.     Plaintiff Little Orbit repeats and re-alleges Paragraphs 1 through 69 as if fully set forth herein.

71.     As set forth above, Defendants' have made multiple false statements disparaging Plaintiff to third parties in the gaming community.

72.     Upon information and belief, the statements made by Defendants would be clearly or necessarily understood to have disparaged the quality and reputation of Plaintiff as a game developer and publisher and/or its products.

73.     Upon information and belief, Defendants false statements constitute trade libel and commercial disparagement *per se*.

74.     Upon information and belief, the statements by Defendants tended to disparage Plaintiff in the gaming community and were intended to harm Plaintiff's reputation as a developer and publisher of quality electronic games.

75.     Defendants' statements are false, and Defendants made those statements with knowledge that they were false or with reckless disregard for their falsity.

76.     Defendants' knew or should have known that Defendants' false statements would harm the reputation of Plaintiff as a developer and publisher of quality electronic games.

77.     Little Orbit has suffered significant and extensive damages and financial injury as a result of Defendants' false statements which has not yet been ascertained but which is not less than $2,000,000.00 to be proven at trial.

## COUNT V

### (Declaratory Relief)

78.     Plaintiff Little Orbit repeats and re-alleges Paragraphs 1 through 74 as if fully set forth herein.

//

//

79.     Pursuant to the Development Agreement, Section 8.1, "All and any Intellectual Property Rights in the Publisher Materials shall belong to, vest in and be the exclusive property of Publisher and Developer shall do all such things as shall be necessary to effect the same."

80.     Pursuant to the Development Agreement, "Publisher Materials" "Means all copy, content, graphics, images, software, data and other materials provided by Publisher (or by a third party on behalf of Publisher) to be incorporated into (or used in association with) the Game by Developer including without limitation all characters, titles, catch phrases, artistic representations, rules, names, and all trademarks, trade names, trade dress of Publisher embodied therein and all audio visual assets and pre-existing source code, game engines, computer code, art assets, graphics, content, text and sound files that are by provided by Publisher (or by a third party on behalf of Publisher) and those materials specifically described as Publisher Materials in the Development Schedule."

81.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends it owns all of the Intellectual Property Rights in the Publisher Materials, whereas Defendants dispute this contention.

82.     Plaintiff desires a judicial determination of the Parties' rights and duties, and a declaration as to Plaintiff's ownership of any and all Intellectual Property Rights in the Publisher Materials.

83.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties regarding the Intellectual Property Rights in the Publisher Materials.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Little Orbit LLC respectfully requests that this Honorable Court enter Judgment in its favor and as against Defendants Descendent Studios Inc., and Eric Peterson ("Peterson"), as follows:

(a)     For an award of damages in an amount to be proven at trial together with an award of prejudgment interest as permitted by law;

17

(b) For compensatory, contractual, consequential and incidental damages according to proof as against Defendant Descendent Studios Inc., due to its breaches of the parties' Agreements and understandings;

(c) For damages according to proof as against Defendants due to their negligent misrepresentations, intentional misrepresentations and/or fraud;

(d) For damages according to proof as against Defendants due to their disparaging statements regarding Plaintiff;

(e) For an award of punitive and exemplary damages in an amount commensurate with the egregious nature of Defendants Descendent Studios Inc. and Eric Peterson's conduct, and significant enough to deter Defendants and other like Defendants from pursuing similar conduct in the future;

(f) For Declaratory Relief declaring that Little Orbit is the owner of all intellectual property created by Defendants in connection with the game Descent: Underground, including but not limited to any and all Intellectual Property Rights in the "Publisher Materials" as defined in the Development Agreement;

(g) For all attorneys' fees as appropriate;

(h) For the costs of suit; *and*

(i) For such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Little Orbit LLC hereby demands a jury trial on all claims for relief triable by jury.

DATED: May 13, 2020     **LAW OFFICE OF M. DANTON RICHARDSON**

By:   /s/ M. Danton Richardson

M Danton Richardson
***Attorney for Plaintiff,***
Little Orbit LLC

18

FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th Day of May, 2020, the foregoing First Amended Complaint was filed with the Court's CM/ECF system and was served on the following counsel of record via email:

Michael C. Whitticar; VSB No. 32968
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:   571-386-2980
Fax:  855-295-0740
Email: mikew@novaiplaw.com
Counsel for Defendants

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com
Counsel for Defendants

/s/ M. Danton Richardson
M. Danton Richardson

ACCO,(JDEx),APPEAL,CLOSED,DISCOVERY,MANADR,PROTORD
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA (Southern Division – Santa Ana)**
**CIVIL DOCKET FOR CASE #: 8:20–cv–00089–DOC–JDE**

| | |
|---|---|
| Little Orbit LLC v. Descendent Studios Inc. et al | Date Filed: 01/16/2020 |
| Assigned to: Judge David O. Carter | Date Terminated: 11/25/2020 |
| Referred to: Magistrate Judge John D. Early | Jury Demand: Both |
| Demand: $2,000,000 | Nature of Suit: 190 Contract: Other |
| Case in other court:  9th CCA, 21–55852 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity–Breach of Contract | |

**Plaintiff**

**Little Orbit LLC**
*a California Limited Liability Company*

represented by **Michael Danton Richardson**
Law Office of M. Danton Richardson
131 North El Molino Avenue Suite 310
Pasadena, CA 91101
949–677–6434
Fax: 626–683–1199
Email: mdantonrichardson@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leo Edward Lundberg , Jr**
Law Office of M. Danton Richardson
131 North El Molino Avenue Suite 310
Pasadena, CA 91101
626–683–7600
Fax: 626–683–1199
Email: leo.law.55@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Descendent Studios Inc.**
*a Texas corporation*

represented by **Michael C Whitticar**
Nova IP Law PLLC
7420 Heritage Village Plaza Suite 101
Gainsville, VA 20155
571–386–2980
Fax: 855–295–0740
Email: mikew@novaiplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nada I Shamonki**
Mintz Levin Cohn Ferris Glovsky and
Popeo PC
2029 Century Park East Suite 3100
Los Angeles, CA 90067
310–586–3200
Fax: 310–586–3202
Email: nshamonki@mintz.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eric Peterson**
*an individual*

represented by **Michael C Whitticar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nada I Shamonki**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Descendent Studios Inc.**
*a Texas corporation*

represented by **Michael C Whitticar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nada I Shamonki**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Little Orbit LLC**
*a California Limited Liability Company*

represented by **Michael Danton Richardson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leo Edward Lundberg , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Descendent Studios Inc.**
*a Texas corporation*

represented by **Michael C Whitticar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nada I Shamonki**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Little Orbit LLC**
*a California Limited Liability Company*

represented by **Michael Danton Richardson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leo Edward Lundberg , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2020 | 1 | COMPLAINT Receipt No: 0973–25132892 – Fee: $400, filed by Plaintiff Little Orbit LLC. (Attorney Michael Danton Richardson added to party Little Orbit LLC(pty:pla))(Richardson, Michael) (Entered: 01/16/2020) |
| 01/16/2020 | 2 | CIVIL COVER SHEET filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 01/16/2020) |
| 01/16/2020 | 3 | Request for Clerk to Issue Summons on Civil Cover Sheet (CV–71) 2 , Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 01/16/2020) |

| | | |
|---|---|---|
| 01/17/2020 | 4 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge John D. Early. (lh) (Entered: 01/17/2020) |
| 01/17/2020 | 5 | NOTICE TO PARTIES OF COURT–DIRECTED ADR PROGRAM filed. (lh) (Entered: 01/17/2020) |
| 01/17/2020 | 6 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Descendent Studios Inc., Eric Peterson. (lh) (Entered: 01/17/2020) |
| 01/17/2020 | 7 | NOTICE OF DEFICIENCIES in Attorney Case Opening. The following error(s) was found: No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1–1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83–7. (lh) (Entered: 01/17/2020) |
| 01/17/2020 | 8 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER upon filing of the complaint by Judge David O. Carter. (dgo) (Entered: 01/17/2020) |
| 01/21/2020 | 9 | *Certification and* NOTICE of Interested Parties filed by Plaintiff Little Orbit LLC, identifying Little Orbit LLC. (Richardson, Michael) (Entered: 01/21/2020) |
| 02/24/2020 | 10 | STIPULATION Extending Time to Answer the complaint as to All Defendants, re Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Little Orbit LLC.(Richardson, Michael) (Entered: 02/24/2020) |
| 02/28/2020 | 11 | ANSWER to Complaint (Attorney Civil Case Opening) 1 with JURY DEMAND filed by Defendants Descendent Studios Inc., Eric Peterson.(Attorney Nada I Shamonki added to party Descendent Studios Inc.(pty:dft), Attorney Nada I Shamonki added to party Eric Peterson(pty:dft))(Shamonki, Nada) (Entered: 02/28/2020) |
| 02/28/2020 | 12 | COUNTERCLAIM against Counterdefendant Little Orbit LLC; Jury Demand, filed by Defendant Descendent Studios Inc..(Shamonki, Nada) (Entered: 02/28/2020) |
| 02/28/2020 | 13 | Certification and Notice of Interested Parties of Interested Parties filed by Defendants Descendent Studios Inc., Eric Peterson, identifying Little Orbit LLC; Descendent Studios Inc.; Eric Peterson. (Shamonki, Nada) (Entered: 02/28/2020) |
| 02/28/2020 | 14 | CORPORATE DISCLOSURE STATEMENT filed by Defendant Descendent Studios Inc. (Shamonki, Nada) (Entered: 02/28/2020) |
| 02/28/2020 | 15 | EXHIBIT Filed filed by Counter Claimant Descendent Studios Inc.. *(Exhibit A to Descendent Studios Inc.'s Counterclaim)* as to Counterclaim 12 . (Shamonki, Nada) (Entered: 02/28/2020) |
| 03/07/2020 | 16 | ORDER SETTING SCHEDULING CONFERENCE by Judge David O. Carter. Scheduling Conference set for 5/11/2020 at 08:30 AM before Judge David O. Carter. (kd) (Entered: 03/07/2020) |
| 03/16/2020 | 17 | APPLICATION of Non–Resident Attorney Michael C. Whitticar to Appear Pro Hac Vice on behalf of Defendants Descendent Studios Inc., Eric Peterson (Pro Hac Vice Fee – $400 Previously Paid on 3/16/2020, Receipt No. 25745204) filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order) (Shamonki, Nada) (Entered: 03/16/2020) |
| 03/18/2020 | 18 | ORDER by Judge David O. Carter: Granting 17 Non–Resident Attorney Michael C. Whitticar APPLICATION to Appear Pro Hac Vice on behalf of Descendent Studios Inc. and Eric Peterson Defendants, designating Nada I. Shamonki as local counsel. (twdb) (Entered: 03/18/2020) |
| 03/20/2020 | 19 | STIPULATION for Extension of Time to File Response as to Counterclaim 12 filed by Defendant Little Orbit LLC.(Richardson, Michael) (Entered: 03/20/2020) |
| 03/20/2020 | 20 | ORDER by Judge David O. Carter, Granting Stipulation for Extension of Time to File Response/Reply 19 . New Response Date 4/3/20. (twdb) (Entered: 03/23/2020) |
| 04/03/2020 | 21 | ANSWER to Counterclaim 12 filed by Plaintiff/Counter–Defendant Little Orbit LLC.(Richardson, Michael) (Entered: 04/03/2020) |

| 04/29/2020 | 22 | SCHEDULING NOTICE by Judge David O. Carter. The Parties in this matter are not in compliance with this Courts scheduling order, which ORDERS parties to file their Rule 26(f) report with the Court no later than fourteen (14) days prior to the Scheduling Conference set by the Court. Scheduling Order at 2. The Report is now due on or before tomorrow at 12:00PM. Failure to submit the order will result in dismissal for lack of prosecution. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/29/2020) |
| --- | --- | --- |
| 04/30/2020 | 23 | Joint STIPULATION to Continue Scheduling Conference from May 11, 2020 to June 8, 2020 Re: Initial Order Setting R26 Scheduling Conference – form only 16 filed by Plaintiff/Counter–Defendant Little Orbit LLC. (Attachments: # 1 Proposed Order)(Richardson, Michael) (Entered: 04/30/2020) |
| 04/30/2020 | 24 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 4–7 days, filed by Defendants Descendent Studios Inc., Eric Peterson.. (Shamonki, Nada) (Entered: 04/30/2020) |
| 05/04/2020 | 25 | ORDER GRANTING CONTINUANCE OF SCHEDULING CONFERENCE DUE TO PARTIES TENTATIVE AGREEMENT TO RESOLVE THIS MATTER THROUGH BINDING ARBITRATION by Judge David O. Carter. The Scheduling Conference currently set for May 11, 2020, is hereby continued to June 8, 2020, at 8:30 a.m. IT IS SO ORDERED. (See order for further details) (yl) (Entered: 05/04/2020) |
| 05/13/2020 | 26 | Joint STIPULATION to Amend Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff/Counter–Defendant Little Orbit LLC. (Attachments: # 1 Exhibit First Amended Complaint, # 2 Proposed Order Proposed Order)(Richardson, Michael) (Entered: 05/13/2020) |
| 05/13/2020 | 27 | ORDER ALLOWING PLAINTIFF LITTLE ORBIT LLC TO FILE A FIRST AMENDED COMPLAINT 26 by Judge David O. Carter: Within 5 days of this Order Plaintiff shall file the First Amended Complaint. Defendants shall have 21 one days from the filing of the First Amended Complaint to file any response thereto. (lc) (Entered: 05/13/2020) |
| 05/14/2020 | 28 | First AMENDED COMPLAINT against Defendants All Defendants amending Complaint (Attorney Civil Case Opening) 1 , filed by Plaintiff/Counter–Defendant Little Orbit LLC(Richardson, Michael) (Entered: 05/14/2020) |
| 06/02/2020 | 29 | MINUTE ORDER (IN CHAMBERS) by Judge David O. Carter: The Scheduling Conference is taken off calendar. No appearances are necessary on June 8, 2020. The Court"s Scheduling Order will be issued. (es) (Entered: 06/03/2020) |
| 06/02/2020 | 30 | SCHEDULING ORDER AND ORDER RE: PRETRIAL AND TRIAL PROCEDURES by Judge David O. Carter. Fact Discovery Cut–off: 10/30/2030. Motion Cut–Off: 11/16/20 at 8:30 AM. Final Pretrial Conference: 1/11/2021 at 8:30 AM. Jury Trial: 2/23/2021 at 8:30 AM. *See order for details.* (es) (Entered: 06/03/2020) |
| 06/04/2020 | 31 | NOTICE OF MOTION AND MOTION to Dismiss Case *(to Dismiss Plaintiff's First Amended Complaint)* filed by Defendants Descendent Studios Inc., Eric Peterson. Motion set for hearing on 7/13/2020 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Michael C. Whitticar, # 3 Proposed Order) (Shamonki, Nada) (Entered: 06/04/2020) |
| 06/04/2020 | 32 | ANSWER to Amended Complaint/Petition 28 *(Defendants' Original Answer and Defenses to Plaintiffs First Amended Complaint and Demand For Jury Trial)* filed by Defendants Descendent Studios Inc., Eric Peterson.(Shamonki, Nada) (Entered: 06/04/2020) |
| 06/04/2020 | 33 | COUNTERCLAIM against Counterdefendant Little Orbit LLC; Jury Demand, filed by Defendant Descendent Studios Inc..(Shamonki, Nada) (Entered: 06/04/2020) |
| 06/04/2020 | 34 | ORDER/REFERRAL to ADR Procedure No 1 by Judge David O. Carter. Case ordered to Magistrate Judge John D. Early for Settlement Conference. (twdb) (Entered: 06/05/2020) |

| | | |
|---|---|---|
| 06/22/2020 | 35 | OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *(to Dismiss Plaintiff's First Amended Complaint)* 31 filed by Plaintiff Little Orbit LLC. (Attachments: # 1 Declaration of M. Danton Richardson in Support of Opposition to Defendants' Motion to Dismiss)(Richardson, Michael) (Entered: 06/22/2020) |
| 06/26/2020 | 36 | STIPULATION for Extension of Time to File Reply as to NOTICE OF MOTION AND MOTION to Dismiss Case *(to Dismiss Plaintiff's First Amended Complaint)* 31 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 06/26/2020) |
| 06/29/2020 | 37 | ORDER by Judge David O. Carter, Granting Stipulation to Enlarge Time for Reply Brief RE Defendants' Motion to Dismiss Plaintiff's First Amended Complaint 36 . Defendants' deadline to file a reply is hereby extended through and including 7/7/20. ( Motion hearing continued to 7/20/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 06/30/2020) |
| 07/07/2020 | 38 | REPLY in support of NOTICE OF MOTION AND MOTION to Dismiss Case *(to Dismiss Plaintiff's First Amended Complaint)* 31 filed by Defendants Descendent Studios Inc., Eric Peterson. (Shamonki, Nada) (Entered: 07/07/2020) |
| 07/14/2020 | 39 | STIPULATION to Continue Hearing from 7/20/20 to TBD Re: NOTICE OF MOTION AND MOTION to Dismiss Case *(to Dismiss Plaintiff's First Amended Complaint)* 31 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 07/14/2020) |
| 07/15/2020 | 40 | SCHEDULING NOTICE by Judge David O. Carter. The Court finds the Motion to Dismiss Case (to Dismiss Plaintiff's First Amended Complaint) filed by Defendants Descendent Studios Inc., Eric Peterson. 31 appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing set for JULY 20, 2020, is removed from the calendar and the motion is taken under submission. No appearances are necessary on this date and time. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 07/15/2020) |
| 09/04/2020 | 41 | MINUTES (IN CHAMBERS) by Judge David O. Carter: ORDER DENYING DEFENDANTS' MOTION TO DISMISS 31 .Plaintiff may proceed on the First Amended Complaint. (lc) (Entered: 09/04/2020) |
| 10/07/2020 | 42 | Joint STIPULATION to Extend Discovery Cut–Off Date to 11/30/2020 filed by Plaintiff/Counter–Defendant Little Orbit LLC. (Attachments: # 1 Proposed Order Extending Discovery/Motion Cutoff dates)(Richardson, Michael) (Entered: 10/07/2020) |
| 10/08/2020 | 43 | ORDER by Judge David O. Carter, Granting Stipulation to Extend Discovery Cut–Off Date and Motion Cutoff 42 . The discovery cutoff shall be extended to November 30, 2020, and the motion cutoff shall be extended to December 14, 2020. All other deadlines and dates shall remain the same. ( Discovery cut–off 11/30/2020.) (twdb) (Entered: 10/09/2020) |
| 10/14/2020 | 44 | Joint STIPULATION for Protective Order filed by Plaintiff/Counter–Defendant Little Orbit LLC. (Attachments: # 1 Proposed Order Protective Order)(Richardson, Michael) (Entered: 10/14/2020) |
| 10/14/2020 | 45 | PROTECTIVE ORDER by Magistrate Judge John D. Early re Stipulation for Protective Order 44 . (see document for details) (hr) (Entered: 10/14/2020) |
| 11/02/2020 | 46 | MINUTE ORDER (IN CHAMBERS) by Magistrate Judge John D. Early, re Settlement Conference Scheduling. On June 4, 2020, Judge Carter ordered the parties to participate in settlement proceedings before the assigned magistrate judge and ordered counsel for the parties "to contact the magistrate judge's courtroom deputy to arrange a date and time" for the settlement proceedings. Dkt. 34. Counsel are ordered to confer and select one of the following dates for the settlement conference, to be conducted remotely, starting at 10:00 a.m. and lasting all day: November 17 or 18 or December 1, 2020.(see document for additional information) (mba) (Entered: 11/02/2020) |
| 11/03/2020 | 47 | ORDER SETTING SETTLEMENT CONFERENCE by Magistrate Judge John D. Early. Per the Order of the Honorable David O. Carter, United States District Judge, a |

| | | |
|---|---|---|
| | | Settlement Conference will be held with Magistrate Judge John Early on November 17, 2020, starting at 10:00 a.m.(see document for further details) (mba) (Entered: 11/03/2020) |
| 11/17/2020 | 48 | MINUTES OF Settlement Conference held before Magistrate Judge John D. Early. On November 17, 2020, counsel for and representatives of the parties appeared byvideoconference before Magistrate Judge John D. Early for a settlement conference. After approximately 6 hours and 20 minutes of discussions, the parties reached a settlement of the matter, the material terms of which are contained in a writing, signed electronically with the parties' and counsels' consent, and filed as attachment hereto under seal. The parties were further reminded to comply with Judge Carter's notice requirements regarding the completion of settlement proceedings. (Attachments: # 1 Sealed Document) (mba) (Entered: 11/18/2020) |
| 11/18/2020 | 49 | TEXT ONLY ORDER re: Settlement Conference 48 . Notice of Settlement due by 11/20/2020. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dgo) TEXT ONLY ENTRY (Entered: 11/18/2020) |
| 11/20/2020 | 50 | NOTICE of Settlement *(Joint)* filed by Defendants Descendent Studios Inc., Eric Peterson. (Shamonki, Nada) (Entered: 11/20/2020) |
| 11/25/2020 | 51 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: ORDER DISMISSING CIVIL CASE. The Court hereby orders ALL pending hearing dates VACATED and taken off calendar. The Court retains jurisdiction for thirty (30) days to vacate this order and reopen the action upon showing of good cause that the settlement has not been consummated. re: Notice of Settlement 50 . (Made JS−6. Case Terminated.) (twdb) (Entered: 11/25/2020) |
| 12/23/2020 | 52 | STIPULATION for Order Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 12/23/2020) |
| 12/23/2020 | 53 | ORDER EXTENDING THE COURT'S JURISDICTION FOR AN ADDITIONAL THIRTY (30) DAYS FOR THE PARTIES TO COMPLETE THEIR SETTLEMENT 52 by Judge David O. Carter. (lom) (Entered: 12/28/2020) |
| 01/22/2021 | 54 | STIPULATION for Order Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 01/22/2021) |
| 01/22/2021 | 55 | ORDER by Judge David O. Carter, Granting Stipulation Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement 54 . (twdb) (Entered: 01/26/2021) |
| 02/18/2021 | 56 | STIPULATION for Order Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 02/18/2021) |
| 02/18/2021 | 57 | ORDER by Judge David O. Carter, Granting Stipulation Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement 56 . (twdb) (Entered: 02/19/2021) |
| 03/19/2021 | 58 | STIPULATION for Order Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 03/19/2021) |
| 03/19/2021 | 59 | ORDER by Judge David O. Carter, Granting Stipulation Extending the Court's Jurisdiction for an Additional Thirty (30) Days for the Parties to Complete Their Settlement 58 . (twdb) (Entered: 03/19/2021) |
| 04/16/2021 | 60 | STIPULATION for Order for Court to Retain Jurisdiction for an Additional Sixty (60) Days for the Court to Hear Descendent's Motion to Enforce the Binding Settlement Terms Sheet filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 04/16/2021) |

| 04/16/2021 | 61 | NOTICE OF AND MOTION to Enforce the Binding Settlement Terms Sheet filed by Defendants Descendent Studios Inc., Eric Peterson. Motion set for hearing on 5/24/2021 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Memorandum of Points and Authorities in Support, # 2 Declaration of Eric Peterson in Support, # 3 Declaration of Michael C. Whitticar in Support, # 4 Proposed Order) (Shamonki, Nada) (Entered: 04/16/2021) |
|---|---|---|
| 04/16/2021 | 62 | APPLICATION to file document *(Mtn to Enforce Binding Settlement Terms Sheet and Further Documents Related to Settlement)* under seal filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order Granting Application to Seal, # 2 Redacted Document (Ntc of Mtn and Mtn to Enforce Binding Settlement Terms Sheet), # 3 Redacted Document (Memo in Support of Mtn to Enforce Binding Settlement Terms Sheet), # 4 Redacted Document (Dec. of Eric Peterson in Support of Mtn to Enforce Binding Settlement Terms Sheet), # 5 Redacted Document (Dec. of Michael C. Whitticar in Support of Mtn to Enforce Binding Settlement Terms Sheet), # 6 Redacted Document (Proposed Order Granting Mtn to Enforce Binding Settlement Terms Sheet))(Shamonki, Nada) (Entered: 04/16/2021) |
| 04/16/2021 | 63 | SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *(Mtn to Enforce Binding Settlement Terms Sheet and Further Documents Related to Settlement)* under seal 62 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Unredacted Document (Ntc of Mtn and Mtn to Enforce Binding Settlement Terms Sheet), # 2 Unredacted Document (Memo in Support of Mtn to Enforce Binding Settlement Terms Sheet), # 3 Unredacted Document (Dec. of Eric Peterson in Support of Ntc of Mtn to Enforce Binding Settlement Terms Sheet), # 4 Unredacted Document (Dec. of Michael C. Whitticar in Support of Mtn to Enforce Binding Settlement Terms Sheet), # 5 Unredacted Document (Proposed Order Granting Mtn to Enforce Binding Settlement Terms Sheet))(Shamonki, Nada) (Entered: 04/16/2021) |
| 04/20/2021 | 64 | ORDER by Judge David O. Carter: Granting Consented To APPLICATION for Leave to File Under Seal Portions of Defendants' Motion to Enforce the Binding Settlement Terms Sheet and Further Motions and Briefs Related to Settlement 62 . SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 04/20/2021) |
| 04/20/2021 | 66 | ORDER by Judge David O. Carter, Granting Stipulation EXTENDING THE COURTS JURISDICTION FOR AN ADDITIONAL SIXTY (60) DAYS FOR THE COURT TO HEAR DESCENDENTS MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS SHEET 60 . (twdb) (Entered: 04/21/2021) |
| 04/21/2021 | 65 | SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 filed by Defendants Descendent Studios Inc., Eric Peterson. Motion set for hearing on 5/24/2021 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Memorandum of Points and Authorities in Support, # 2 Declaration of Eric Peterson in Support, # 3 Declaration of Michael C. Whitticar in Support, # 4 Proposed Order)(Shamonki, Nada) (Entered: 04/21/2021) |
| 05/03/2021 | 67 | SEALED OPPOSITION RE Order on Motion for Leave to File Document Under Seal, 64 filed by Plaintiff Little Orbit LLC. (Attachments: # 1 Unredacted Document Declaration in Opposition to Defendants, # 2 Unredacted Document Objections to Declaration of Eric Peterson)(Richardson, Michael) (Entered: 05/03/2021) |
| 05/03/2021 | 68 | MEMORANDUM in Opposition to SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 filed by Plaintiff Little Orbit LLC. (Attachments: # 1 Declaration Objections to Declaration of Eric Peterson)(Richardson, Michael) (Entered: 05/03/2021) |
| 05/04/2021 | 69 | DECLARATION of Matthew Scott In Opposition SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 05/04/2021) |
| 05/04/2021 | 70 | SEALED DOCUMENT *Richardson Declaration in Opposition to* re SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, |

| | | |
|---|---|---|
| | | 64 65 , Order on Motion for Leave to File Document Under Seal, 64 filed by Plaintiff Little Orbit LLC.(Richardson, Michael) (Entered: 05/04/2021) |
| 05/04/2021 | 71 | DECLARATION of M. Danton Richardson In Opposition SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 05/04/2021) |
| 05/10/2021 | 73 | SEALED REPLY RE Reply (Motion related),, 72 , NOTICE OF MOTION AND MOTION to Enforce the Binding Settlement Terms Sheet 61 , SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 , Order on Motion for Leave to File Document Under Seal, 64 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Declaration of Eric Peterson in Support of Reply, # 2 Responses to Little Orbit's Objections to Eric Peterson's Declaration, # 3 Defendants' Objections to the Declaration of Matt Scott, # 4 Defendants' Objections to the Declaration of Danton Richardson)(Shamonki, Nada) (Entered: 05/10/2021) |
| 05/13/2021 | 74 | REQUEST for Order for Appearance via Zoom at Motion Hearing on May 24, 2021 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order) (Shamonki, Nada) (Entered: 05/13/2021) |
| 05/17/2021 | 75 | SEALED DOCUMENT *Request for Judicial Notice* re SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 , Order on Motion for Leave to File Document Under Seal, 64 filed by Plaintiff Little Orbit LLC.(Richardson, Michael) (Entered: 05/17/2021) |
| 05/17/2021 | 76 | REQUEST FOR JUDICIAL NOTICE re SEALED NOTICE OF MOTION AND MOTION *to Enforce the Binding Settlement Terms Sheet [see also Dkt. 61]* re Order on Motion for Leave to File Document Under Seal, 64 65 filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 05/17/2021) |
| 05/19/2021 | 77 | SCHEDULING NOTICE by Judge David O. Carter. This Court refers the parties to Magistrate Judge Early for a Zoom hearing on the Motions to Enforce the Binding Settlement Terms Sheet 61 65 . The Zoom hearing will be held on May 24th at 12:00 PM. Request for Zoom is granted for all parties. 74 . Counsel shall contact the Courtroom Deputy Clerk to Judge Early for complete Zoom details. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 05/19/2021) |
| 05/24/2021 | 78 | MINUTES OF Motion Hearing held before Magistrate Judge John D. Early re Defendant's Motion to Enforce the Binding Settlement Terms 61 , 65 . Case Called Counsel make appearances. Counsel argue. Motion taken under submission. Court Recorder: Zoom. (mba) (Entered: 05/24/2021) |
| 05/24/2021 | 79 | REPORT AND RECOMMENDATION issued by Magistrate Judge John D. Early re 61 , 65 .(see document for details) (mba) (Entered: 05/24/2021) |
| 05/28/2021 | 80 | TRANSCRIPT ORDER as to Defendants Descendent Studios Inc., Eric Peterson for Court Smart (CS). Court will contact Taylor Quinlan at novaipoffice@gmail.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Shamonki, Nada) (Entered: 05/28/2021) |
| 06/01/2021 | 81 | TRANSCRIPT for proceedings held on 5/24/21. Court Reporter/Electronic Court Recorder: JAMS Certified Transcription, phone number (661) 609–4528. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 6/22/2021. Redacted Transcript Deadline set for 7/2/2021. Release of Transcript Restriction set for 8/30/2021. (jlo). (Entered: 06/01/2021) |
| 06/01/2021 | 82 | NOTICE OF FILING TRANSCRIPT filed for proceedings 5/24/21 re Transcript 81 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (jlo) TEXT ONLY ENTRY (Entered: 06/01/2021) |

| | | |
|---|---|---|
| 06/04/2021 | 83 | TRANSCRIPT ORDER as to Plaintiff/Counter–Defendant Little Orbit LLC for Court Smart (CS). Court will contact Danton Richardson at mdantonrichardson@yahoo.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Richardson, Michael) (Entered: 06/04/2021) |
| 06/17/2021 | 84 | ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE by Judge David O. Carter. IT IS THEREFORE HEREBY ORDERED that: The Report and Recommendation (Dkt. 79 ) is approved and accepted; The Motion (Dkt. 61 , 65 ) is DENIED. [See document for further information] (et) (Entered: 06/21/2021) |
| 06/21/2021 | 85 | STIPULATION for Order for Court to Retain Jurisdiction for an Additional One Year (365 Days) over Settlement filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order)(Shamonki, Nada) (Entered: 06/21/2021) |
| 06/22/2021 | 86 | ORDER by Judge David O. Carter, Granting Stipulation Extending the Court's Jurisdiction for an Additional One Year (365 Days) Over Settlement 85 . (twdb) (Entered: 06/23/2021) |
| 06/23/2021 | 87 | SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* re Order on Motion for Leave to File Document Under Seal, 64 filed by Plaintiff Little Orbit LLC. Motion set for hearing on 7/26/2021 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Declaration, # 2 Declaration)(Richardson, Michael) (Entered: 06/23/2021) |
| 06/24/2021 | 88 | NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* filed by Plaintiff/Counter–Defendant Little Orbit LLC. Motion set for hearing on 7/26/2021 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Declaration, # 2 Declaration) (Richardson, Michael) (Entered: 06/24/2021) |
| 06/24/2021 | 89 | REQUEST FOR JUDICIAL NOTICE re SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* re Order on Motion for Leave to File Document Under Seal, 64 87 , NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* 88 filed by Plaintiff Little Orbit LLC. (Richardson, Michael) (Entered: 06/24/2021) |
| 06/24/2021 | 90 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* 87 , NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference 88 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (twdb) (Entered: 06/24/2021) |
| 07/02/2021 | 91 | OPPOSITION re: SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* re Order on Motion for Leave to File Document Under Seal, 64 87 , NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* 88 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Declaration of Eric Peterson, # 2 Declaration of Michael C. Whitticar)(Shamonki, Nada) (Entered: 07/02/2021) |
| 07/02/2021 | 92 | SEALED OPPOSITION RE Objection/Opposition (Motion related), 91 , SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* re Order on Motion for Leave to File Document Under Seal, 64 87 , NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* 88 , Order on Motion for Leave to File Document Under Seal, 64 filed by Defendants Descendent Studios Inc., Eric Peterson.(Shamonki, Nada) (Entered: 07/02/2021) |
| 07/12/2021 | 93 | SEALED REPLY RE SEALED NOTICE OF MOTION AND MOTION *to Set Aside Settlement Terms Sheet* re Order on Motion for Leave to File Document Under Seal, 64 87 , NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* 88 , Order on Motion for Leave to File Document Under Seal, 64 filed by Plaintiff Little Orbit LLC. (Attachments: # 1 Declaration Matt Scott, # 2 Declaration M. Danton Richardson)(Richardson, Michael) (Entered: 07/12/2021) |

| | | |
|---|---|---|
| 07/13/2021 | 94 | REPLY NOTICE OF MOTION AND MOTION to Set Aside Settlement Conference,, 48 *Settlement Terms Sheet* 88 filed by Plaintiff Little Orbit LLC. (Attachments: # 1 Declaration Matt Scott, # 2 Declaration M. Danton Richardson)(Richardson, Michael) (Entered: 07/13/2021) |
| 07/19/2021 | 95 | REQUEST for Order for Appearance via Zoom at Motion Hearing on July 26, 2021 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Proposed Order) (Shamonki, Nada) (Entered: 07/19/2021) |
| 07/21/2021 | 96 | Second NOTICE OF MOTION AND MOTION to Enforce the Binding Settlement Terms Sheet filed by Defendants Descendent Studios Inc., Eric Peterson. Motion set for hearing on 8/23/2021 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Memorandum of Points and Authorities in Support, # 2 Declaration of Eric Peterson in Support, # 3 Declaration of Michael C. Whitticar in Support, # 4 Proposed Order) (Shamonki, Nada) (Entered: 07/21/2021) |
| 07/21/2021 | 97 | SEALED DOCUMENT *Memorandum of Points and Authorities* re Second NOTICE OF MOTION AND MOTION to Enforce the Binding Settlement Terms Sheet 96 , Order on Motion for Leave to File Document Under Seal, 64 filed by Defendants Descendent Studios Inc., Eric Peterson. (Attachments: # 1 Declaration of Eric Peterson in Support, # 2 Proposed Order)(Shamonki, Nada) (Entered: 07/21/2021) |
| 07/23/2021 | 98 | SCHEDULING NOTICE by Judge David O. Carter. The Court finds the Motions to Set Aside the Binding Settlement Terms Sheet Due to Defendants Fraud and Failure to Deliver the Assets Covered by the Terms Sheet or for Alternative Relief and for an Award of Attorneys Fees 87 88 appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing set for JULY 26, 2021 is removed from the calendar and the motions are taken under submission. The Request for Order for Appearance via Zoom at Motion hearing 95 is DENIED. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 07/23/2021) |
| 07/27/2021 | 99 | MINUTES (IN CHAMBERS) by Judge David O. Carter: ORDER DENYING PLAINTIFF'S MOTION TO SET ASIDE THE BINDING SETTLEMENT TERMS 88 AND GRANTING DEFENDANTS' SECOND MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS 96 . The Court DENIES Plaintiff's Motion to Set Aside Binding Settlement Terms Sheet, and GRANTS Defendants Motion to Enforce Binding Settlement Terms Sheet. Additionally, the Court DENIES granting attorneys' fees to both sides. SEE DOCUMENT FOR FURTHER INFORMATION. (et) (Entered: 07/27/2021) |
| 08/05/2021 | 100 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff/Counter–Defendant Little Orbit LLC. Appeal of Order on Motion to Set Aside,,, Order on Motion to Enforce,, 99 . (Appeal Fee – $505 Fee Paid, Receipt No. ACACDC–31752221.) (Richardson, Michael) (Entered: 08/05/2021) |
| 08/05/2021 | 101 | First AMENDED NOTICE OF APPEAL to 9th CIRCUIT filed by Plaintiff/Counter–Defendant Little Orbit LLC. Amending Notice of Appeal to 9th Circuit Court of Appeals, 100 Filed On: 08/05/2021; Entered On: 08/05/2021; (Richardson, Michael) (Entered: 08/05/2021) |
| 08/09/2021 | 102 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 21–55852 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 100 as to Plaintiff and Counterdefendant Little Orbit LLC. (et) (Entered: 08/10/2021) |

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | Appeal No. 21-55852

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

APPELLANT'S APPENDIX RE
EMERGENCY MOTION UNDER CIRCUIT RULE
27-3 FOR STAY OF ORDER PENDING APPEAL
Vol. III of IV

**Signature** | s/ M. Danton Richardson | **Date** | August 24, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*