Appeal No. 21-55852

**REDACTED**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____


LITTLE ORBIT, LLC
Plaintiff – Appellant,

vs.

DESCENDENT STUDIOS INC. and ERIC PETERSON,
Defendants – Appellees

_____


On Appeal from the United States District Court for the Central District of
California
Civil Action No. 8:20-cv-00089-DOC-JDE, Hon. David O. Carter, Judge

_____


**APPELLANT'S REPLY IN SUPPORT OF
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
STAY OF ORDER PENDING APPEAL**
_____

M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LAW OFFICES OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101
Telephone: (949) 677-6434

Attorneys for Plaintiff/Appellant, LITTLE ORBIT LLC

## TABLE OF CONTENTS

I.      **INTRODUCTION…….**                                           5

II.    **ARGUMENT**                                                   8

     A.    **This Appeal is Proper**                             8

     B.    **Little Orbit Is Likely to Succeed on The Merits**     10

          1.    **Defendants' Opposition Confirms Little Orbit Will Suffer Irreparable Harm if a Stay is Not Granted**    10

          2.    **There was No Time to Present a Motion for Stay to the District Court**    13

          3.    **The District Court Granted Defendants' Motion to Enforce without Allowing Little Orbit to File a Response Thereto**    13

          4.    **The BSTS Provided for Alternative Payment Terms Which Defendants are Now Arguing Provides for a Double Recovery and Unlawful Penalty**    14

          5.    **Defendants Continue to Belatedly and Falsely Argue that Payments were Due Based on the Signing of the BSTS**    16

          6.    **Defendants Refusal and Ultimate Long delay in Turning Over the "all game IP"**    18

          7.    **There was No Meeting of the Minds or a Unilateral Mistake on the Part of Little Orbit Regarding the Meaning of "Revenues"**    22

**8.** **Little Orbit Never Requested an "Extension of Time" to Complete Development of the Game**      **25**

**9.** **Defendants' Demand for "Adequate Assurance"**      **26**

**10.** **The District Court's Previous Order Does Not Preclude Little Orbit from Raising the Issues in this Appeal**      **28**

**11.** **Descendent is the Party Which Breached the Underlying Development Agreement**      **29**

**V.** **CONCLUSION**      **30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989)       9, 10

*Hirschfeld v. Board of Elections*, 984, F. 2d 25, 39 (2d Cir. 1993)       13

*Lado v. Wolf*, 952 F. 3d 999, 1008 (9th Cir. 2020)       13

**Statutes**

28 U.S.C. 1291       9, 10

## I.    INTRODUCTION

Defendants/Appellees DESCENDENT STUDIOS INC. and ERIC

PETERSON's (collectively "Defendants" or "Descendent") Opposition confirms

the need for a stay pending appeal by arguing that "it is the position of Descendent

that Little Orbit is in material breach and that the BSTS and the IP license

contained therein are subject to cancellation."  Opp at p. 17, n. 7.  This is based on

Little Orbit not complying with the District Court's Order that is the subject of this

appeal.  In fact, Defendants go on to argue "Little Orbit has committed yet another

material breach of the BSTS and also is in contempt of the district court's order."

Opp at p. 8.

As pointed out in the Motion, a party should not be subject to losing their

rights or being found in contempt of the Order in issue during the pendency of an

appeal but that is exactly what Defendants arguing for and thereby acknowledging

will occur - a forfeiture of Little Orbit's rights.  A stay is necessary to ensure Little

Orbit's rights will not be prejudiced by pursuing this appeal claiming – that Little Orbit's failure to comply with the Order under appeal should.

Defendants Opposition does not dispute key issues supporting a grant of a stay:

- the District Court granted Defendants Second Motion to Enforce the BSTS without even waiting for Little Orbit to submit an opposition thereto.[1] This alone provides grounds for its reversal.

- the District Court considered Defendants' Motion to Enforce in ruling on Little Orbit's Motion, effectively treating it as an unauthorized and improper sur-reply which Little Orbit had no opportunity to respond or address the false and misleading arguments contained therein.

- Defendants also do not deny nor even address Little Orbit's point that Defendants refused to turn over the game code multiple times until well into June 2021, more than six full months after the BSTS was signed.

- Defendants also do not address nor try to explain away the multiple Stipulations and Requests by the parties for the District Court to

---

[1] A true and correct copy the District Court's July 27, 2021, Order is attached to the Emergency Motion as **Exhibit A**.

extend its jurisdiction reflect the parties were still actively engaged in negotiating the terms of a long form agreement as well as an agreement with a third party (InterPlay) as late as April 16, 2021: "WHEREAS the parties are still working to finalize their settlement, including necessary negotiations with a third party as provided for in the parties' agreement to settle as worked out by Magistrate Early, and jointly desire for the Court to retain jurisdiction for an additional sixty (60) days." [April 16, 2021, Stipulation and Request for Court to Retain Jurisdiction, App. Vol. 4, at 245]. All without any action by Defendants claiming the payment dates ran from the date the BSTS was signed. This confirms the parties were actively negotiating the terms of what was viewed as the "written memorialization" anticipated by the BSTS.

An emergency Order staying the District Court's July 27, 2021, Order is necessary to maintain the *status quo* pending this appeal and to prevent Little Orbit's rights under the BSTS from being terminated by the lapse of time rendering this appeal moot. Nothing in Defendants' Opposition disputes that such a stay in needed but instead actually confirms the need for a stay by asserting that Little Orbit has forfeited its rights under the BSTS by failing to comply with the Order under appeal. Put simply, without a Stay of the Order, Little Orbit's appeal will

become moot and Little Orbit will be irreparably harmed by the loss of its

investment of ████████████ in the video game.  This warrants immediate

issuance of a stay of the Order and all deadlines in the BSTS until this appeal is

resolved.

## IV.   ARGUMENT

As shown by Little Orbit's Emergency Motion, and again in this Reply,

Little Orbit is likely to prevail on appeal and Little Orbit will be irreparably

harmed without a stay.  A stay will not substantially harm Defendants, and the

public interest supports a stay.  Defendants Opposition confirms the need for a

stay.

### C.    This Appeal is Proper

Defendants contend that this appeal is improper because the District Court's

Order is not a "final" judgment and allegedly did not address all of the issues

between the parties.  Opp at pp. 8-9.  The fact that the Order does not address all of

the potential issues between the parties is one of the many problems with the

District Court's Order.  For example, the first issue not addressed as identified by

Defendants is "How much money and which settlement payments are now due

from Little Orbit to Descendent?"  That is clearly an issue raised by Defendants'

Motion to Enforce and which the District Court's Order should have specifically

addressed but the District Court failed to do other than simply state that Defendants

Motion was "granted." The District Court clearly acted inappropriately in issuing

such an Order without even waiting for the benefit of Little Orbit's Opposition.

The fact the District Court did not resolve all potential issues does not mean

the Order is not appealable. There is already a "final" judgment in this action and

that was the order dismissing the action. The District Court retained jurisdiction to

enforce the parties' settlement and purportedly did so in the subject order which

denied Little Orbit's Motion to Set Aside but also granted Defendants' Second

Motion to Enforce. As a ruling purporting to enforce a judgment the Order is

appealable under 28 U.S.C. 1291. See *Adams v. Johns-Manville Corp*., 876 F.2d

702, 704 (9th Cir. 1989) ("This case involves enforcement of an alleged settlement

. . . . Our jurisdiction to review these issues [regarding an Order enforcing the settlement] is under 28 U.S.C. § 1291.").

### D. Little Orbit Is Likely to Succeed on The Merits

#### 1. Defendants' Opposition Confirms Little Orbit Will Suffer Irreparable Harm if a Stay is Not Granted

As noted, Defendants Opposition confirms the need for a stay pending appeal by arguing that "it is the position of Descendent that Little Orbit is in material breach and that the BSTS and the IP license contained therein are subject to cancellation." Opp at p. 17, n. 7. This is based on Little Orbit not complying with the District Court's Order that is the subject of this appeal. In fact, Defendants go on to argue "Little Orbit has committed yet another material breach of the BSTS and also is in contempt of the district court's order." Opp at p. 8.

As pointed out in the Motion, a party should not be subject to losing their rights or being found in contempt of the Order in issue during the pendency of an appeal but that is exactly what Defendants arguing for and thereby acknowledging will occur - a forfeiture of Little Orbit's rights. A stay is necessary to ensure Little Orbit's rights will not be prejudiced by pursuing this appeal claiming – that Little Orbit's failure to comply with the Order under appeal should.

Defendants complain that Little Orbit still has not made any payments under the BSTS. But that is one of the very purposes of this appeal – to determine whether any such payments should be required at all given the parties disagreement (mistake/no meeting of the minds) regarding the meaning of "revenues" as used in the BSTS and also when or if any advance payments are due given the parties expressly provided for a remedy for any late payments (see discussion below).

Descendent spends a lot of its Opposition pointing out that Little Orbit has not complied with the District Court 's Order. "The only reason that Little Orbit could be subject to termination in the next two and one-half months is that it has voluntarily decided not to make any settlement payments and not to provide the court ordered financial, development status and fundraising status data and document, in clear and voluntary violation of the district court order." Opp at pp. 10-11. This effectively acknowledges that irreparable harm will occur to Little Orbit in the next two and one-half months but blames it on Little Orbit for not complying with the BSTS and the Order that is the subject of this appeal. Thus, Defendants are basically saying Little Orbit should simply comply with the subject Order, never mind that would render this appeal moot. That is not how this process works and Defendants' arguments otherwise serve to confirm the need for a stay.

Defendants further argue that any irreparable harm to Little Orbit is "self-inflicted" citing *Lado v. Wolf*, 952 F. 3d 999, 1008 (9th Cir. 2020), citing *Hirschfeld v. Board of Elections*, 984, F. 2d 25, 39 (2d Cir. 1993). Opp at p. 16. But each of these cases are easily distinguished on the merits as they do not address a situation, like we have here, where the appealing party is subject to forfeiting their rights by not complying with the order being appealed. That is the very purpose of maintaining the "status quo" and what is needed here – to keep the parties in the same position until the appeal can be resolved and the rights and obligations of the parties under the BSTS are settled.

Defendants also complain that Little Orbit has not been developing the game and claim that any risk of losing its rights is its own "self-inflicted harm." But under the District Court's June 17, 2021[2], ruling Little Orbit's time to develop the game runs one (1) year from May 24, 2021, not the original date of the BSTS of November 21, 2020, as provided by the District Court in its June 27, 2021, Order which is the subject of this appeal. This appeal is needed to confirm the time for Little Orbit to develop the game and Little Orbit's rights should not be allowed to expire during the pendency of this appeal.

---

2 It bears noting that Defendant argues elsewhere that this Order is final and binding on Little Orbit. That same would apply to Defendants, meaning the time provided can be no earlier than May 24, 2021 as provided in such Order.

### 2. There was No Time to Present a Motion for Stay to the District Court

Defendants take issue with Little Orbit not seeking a stay from the District Court even accusing Little Orbit of trying to avoid having the motion heard by the Magistrate who handled the Settlement Conference which resulted in the BSTS. It is the District Court which issued the Order being appealed and it is the District Court which would have heard any motion to stay. Defendants have not, however, challenged the time line asserted by Little Orbit which made seeking a stay in the District Court impractical. In fact, Defendants' insistence that Little Orbit is in breach of the BSTS by not complying the Order being appealed confirms the immediate need for a stay – all deadlines and payment obligations should be stayed pending the outcome of this appeal so that the issues regarding the parties' rights and obligations under that agreement may be resolved. This is crucial.

### 3. The District Court Granted Defendants' Motion to Enforce without Allowing Little Orbit to File a Response Thereto

Defendants' Opposition does not even address the fact the District Court granted Defendants' Motion to Enforce just 6 days after it was filed and before Little Orbit's opposition was due, in violation of FRCP (Rule 7(c)(2)), Central District Local Rule 7-9, the Judge's own rules which denied Little Orbit due process and fundamental fairness.

Defendants also do not deny that factual disputes regarding the meaning of a settlement agreement should be resolved via an evidentiary hearing. Rather, they simply claim that Little Orbit waived any such right arguing "Little Orbit never

made a single demand for an evidentiary hearing on any aspect of the settlement disputes." This, of course, ignores the fact the District Court granted Defendants' Motion to Enforce before Little Orbit ever had the opportunity to submit any opposition thereto. It is therefore most disingenuous for Defendants to argue that Little Orbit waived a right when Little Orbit never even had the chance as to assert such a right as to Defendants' Motion to Enforce.

### 4. The BSTS Provided for Alternative Payment Terms Which Defendants are Now Arguing Provides for a Double Recovery and Unlawful Penalty

One area of dispute is what payments were due under the BSTS and when. These questions were raised by Defendants Second Motion to Enforce but the District Court granted that Motion before the time provided for Little Orbit to file an opposition, which was a total miscarriage of justice and blatant violation of due process and fundamental fairness. For this reason alone the Order should be reversed.

The Order found that "Plaintiff has also failed to make the first two settlement payments to Defendants" and then simply concludes that the District Court "GRANTS Defendant's Motion to Enforce Binding Settlement Terms Sheet." Grants it how? First, the District Court was clearly incorrect in finding that the "first two settlement payments" had not been paid as Little Orbit explained in Motion. Second, the District Court did not even address the remedy which was already provided in the BSTS regarding any late payments: "If any payment not made on time, LO pays Descendent ███████████████ in

revenues after default." BSTS, ▌ 4. [APP IV at 164] As is clear from the forgoing language, any late payments were to be made up to Descendent by paying Descendent "████████████████ in revenues after default."

Defendants argue that Descendent is entitled to both the upfront payments provided for under paragraphs 1-3 and that the remedy of ███████████ ████████ in revenues if any one such payment is not made timely as provided in paragraph 4. But that is double dipping and was not what the parties intended. In fact, Defendants new interpretation of the remedy clause would turn that clause into an unlawful penalty. [See Motion at pp. 24-25] Surely that was not what the parties intended, notwithstanding Defendants' belated arguments otherwise.

Defendants try to avoid the fact the remedy clause would be an illegal penalty under their interpretation by arguing that "if the game sells well, then the early ████████████ provides Descendent with no additional funds at all." Opp at p. 4. But that argument is absolutely false. It does not take a math wiz to understand receiving ████ of a revenue stream sooner than later provides the receiving party more money. Here, receiving ████████████████ as opposed to the otherwise applicable ██████████ that would apply to the first ████████ in revenues obviously provides a larger sum of money to Descendent than it would otherwise be entitled. The ████ split (as opposed to ████) was designed to offset Descendent not getting one or more of the upfront payments, not provide for a double recovery. For Defendants to now argue they would be entitled to both the ████████ up front payments and the additional split ████████ ████████ would be mean Little Orbit would be paying Descendent a ████████ penalty simply for being late.

The argument that Descendent would be entitled to both the initial payments and the remedy for "any" late payments as is a totally new argument raised by Defendants. In fact, had Little Orbit been allowed the opportunity to oppose Defendants Motion to Enforce, it would have shown that Defendants' initial draft of the proposed long form agreement betrays their new argument. The first 4 paragraphs of Defendants' proposed long form settlement agreement state (a) the first payment of ███████ was guaranteed [though it clearly is not], (b) if either or both of the second or third payment were missed, then they were entitled to a ████ split on the ████████. There is absolutely no mention of Defendants being entitled to BOTH the initial payments AND the ████ split provided for in paragraph 4 of the BSTS.

### 5. Defendants Continue to Belatedly and Falsely Argue that Payments were Due Based on the Signing of the BSTS

Defendants try to cast Little Orbit as a deadbeat for not having made any of the up-front payments provided for in the BSTS starting 30 days after November 17, 2020, the date of the Settlement Conference. First, the payment dates under the BSTS run from so many days (30 for the first payment) of the parties "signing [a] written memorialization". Defendants belatedly try to argue this meant from the date the BSTS was signed on November 17, 2020, but that was clearly not the intent as evidenced by the lack of any action by Defendants to enforce the payment obligations until months later and only after the parties' efforts to enter into a long form "written memorialization" had finally broken down in April of 2021. Had it

been the intent of the parties that the signing of the BSTS was the start date the

parties would have said so – 30 days from the date of this agreement or something

similar.  Referring to so many days after signing "a written memorialization"

obviously anticipated some yet unknown future date, not a date that was already

certain.  Secondly, the District Court already settled this issue by its Order dated

June 19, 2021, which expressly provided that:

> To the extent the Settlement Agreement (Dkt. 48-1
> (under seal)) used the phrase "within [__] days of signing
> [a] written memorialization" or similar language as a
> triggering event, such trigger date shall be the date of the
> Report and Recommendation, that is, May 24, 2021;

A true and correct copy of this Order is attached as Exhibit C.

Defendants also try to mischaracterize Little Orbit's motives by accusing it

of "fraud" and never having any intent of making the required upfront payments

under the BSTS, but that is exactly what the penalty provision provided – an option

to make the upfront payments or, if those payments are not timely paid, then Little

Orbit would pay a higher portion (█████████████ of the first █████████ in

revenues to Descendent to make up for the delay in its receiving payment.

Defendants try to bootstrap their argument that Little Orbit committed

"fraud" by negotiating for alternative payment terms into a claim that "Little Orbit

is barred by its unclean hands from obtaining a stay pending appeal or any other

equitable relief."  Opp at p. 6.  This claim is baseless as obtaining an agreement for

alternative payment terms is not fraud – the language relied on by Little Orbit is expressed in the BSTS itself.

### 6. Defendants Refusal and Ultimate Long delay in Turning Over the "all game IP"

One of the most egregious matters which occurred since the BSTS was entered into, and one which the District Court totally got wrong in not waiting for Little Orbit to even respond to Defendants' Second Motion to Enforce, is Defendants' flat refusal to turn over "all game IP" as covered by the BSTS. A licensor's refusal to provide access of the licensed assets to the license is clearly inconsistent with the very spirit and intent of the BSTS (which was for Little Orbit to pick up and complete the development of the partially developed game) and is also in breach of the duty of good faith and fair dealing if not the express terms of the license provided by the BSTS. Somehow the District Court concluded that there was no obligation for Descendent to turn over "all game IP" as covered by the license provided under the BSTS in ruling on, and blindly accepting, the one-sided arguments by Defendants. That is clear error and should be reversed on appeal.

The District Court apparently accepted at face value Defendants' claim that Little Orbit had not sought those assets and that somehow meant they were not needed. But that ignores the fact the parties were attempting to negotiate a long form agreement, the parties expected triggering date, into April. Nonetheless, the evidence would have shown that Little Orbit had raised the issue of the turn over of the assets.

The at issue Binding Settlement Terms Sheet ("BSTS") settled the dispute between the parties regarding a video game that Little Orbit had invested approximately ▮▮▮▮▮ in development including having paid Descendent hundreds of thousands of dollars for such development on a Game that Descendent never finished and Little Orbit has not been able to release since February of 2019. Given Descendent was out of business, Little Orbit agreed to take over completing the partially developed game and the BSTS in turn provides the following license to Little Orbit at paragraph 12: "Descendent provides exclusive license to LO on all game IP."

In spite of granting to Little Orbit a license covering "all game IP" Defendants have disingenuously argued that Descendent had no obligation to deliver any of the game IP to Little Orbit.  In fact, Defendants refused to turn over any of the game IP for months until June 15, 2021, when Defendants finally produced only an un-editable snapshot copy of the game code as it existed on some unknown date.  Plaintiff pressed the matter and demanded delivery of "the full source code and the entire project history."  In response, Mr. Peterson advised as follows:

> That [the full source code repository with the entire project history] ***doesn't exist***- Little Orbit needs no such thing, they have the source code. ***There is no project history***, when Little Orbit breached their obligations, ***the servers could no longer be continued***.
>
> ***The project history no longer exists.***

See Scott Decl., Exhibit D (emphasis added).

It was the foregoing shocking revelation which prompted Little Orbit to file its Motion to Set Aside the BSTS just as the first advance payment under the BSTS was going to be due and understandably so – how can a party pick up and complete

the development of a video game – which is comprised of countless art pieces and audio files, not to mention gaming code – without having a copy of those assets ("all game IP")?

As it turns out, Defendants were able to somehow retrieve the project files but that occurred only after and as a result of the filing of the Motion to Set Aside.

It is against this backdrop that Defendants make the argument that Little Orbit is in breach of the BSTS for not having been working on developing the game since November of 2020. As is clear, Defendants are the ones who have hindered the development of the game by repeatedly claiming Descendent had no obligation to turn over the IP assets, then only producing a snapshot of only the game code as it existed at some unknown time and then claiming that such assets "no longer exist." The Declaration of Matt Scott filed with the District Court explains at length why the original art work and other game assets are crucial to the development of the game. Scott Decl., ℙ 22, App. Vol II at 185-86.

Defendants try to justify their failure to maintain the game assets by arguing that they were unable to fund the third-party repository where the game assets were stored once Little Orbit terminated the Development Agreement except that "Respondents did make sure to keep and maintain the game code, because the Respondents knew that the game code is all that is necessary to finish the game." Opp at p. 19. Thus, Defendants confirm they allowed the game assets that Little Orbit paid for to be destroyed. Little Orbit would have happily covered the monthly costs to preserve IP it funded, but Descendent never provided notice to Little Orbit that Defendants had stopped paying for the repository. Instead, Defendants simply allowed the loss of the repository without any notice to Little Orbit.

Descendent claims it had no obligation under the BSTS to deliver anything to Little Orbit other than the specifically identified "pre-order data, Kickstarter data and early backer data to be provided by Descendent to Little Orbit."  BSTS ⁋ 10.  As explained in the Motion, however, this data is not covered by the license so needed to be expressly called out.  The license implicitly requires delivery of the assets being licensed, that is, "all game IP," as that is a fundamental step necessary to carry out the intent of the license.  Defendants' argument otherwise is absurd and reveals its bad faith approach to this matter since the signing of the BSTS.

Defendants also argue that Little Orbit had a copy of the game source code as of November 20, 2018.  Opp at pp. 25-26.  The fact that Little Orbit was able to download a copy of the game code as it existed in November of 2018 does not excuse Defendants from turning over "all game IP" as covered by the BSTS.  In fact, the code possessed by Little Orbit was outdated by several months as Descendent continued to work on the game until Little Orbit terminated the Development Agreement in February of 2019.  [App II at 58:9] Defendants even go so far as to allege in their "Conclusion" that "Little Orbit admits it had all of the necessary assets to complete the game."  Notably, Defendants fail to point out that ONLY occurred AFTER Little Orbit was forced to file the Motion to Set Aside given Defendants repeated refusal to turn over the source code and all game asset and finally admitting that such materials "no longer exist."  [App II at 213]

Further, the BSTS does not state that it only provides Little Orbit with a license covering the source code that was provided to Little Orbit months prior to the termination.  The BSTS could have certainly stated as much if some prior version of the source code and only that source code was all that was supposed to be covered by the parties' agreement.  But there is no such limitation.  Rather, the

agreement is clear and express and refers to "all game IP" which clearly includes everything ("all"), not simply the source code.  As noted in the Motion, the very purpose of the license was to allow Little Orbit to complete development of a partially completed game, not simply release an already completed project.

Lastly, Defendants attempt to cast Little Orbit in a negative light by stating that Little Orbit failed to request a copy of the game code until April of 2021, as argued in the Motion to Enforce.  Had Little Orbit been allowed the opportunity to respond to Defendants' Motion, however, it would have shown that that Defendants and Little Orbit were both actively negotiating with InterPlay during February and March 2021 on a deal where InterPlay would have taken over all of the remaining development and that Defendants caused serious delay in those negotiations when they delayed responding to requests by InterPlay.  It is disingenuous of Defendants to argue that Little Orbit was looking for excuses not to start development, when Defendants themselves were championing a totally new deal with InterPlay in February and March 2021.  Given those negotiations there was no reason for Little Orbit to seek the source code and other assets until April of 2021 when it was clear the proposed InterPlay deal was not going forward and Little Orbit was left to invest the money necessary to finish development despite the ongoing dispute over the terms in the BTST.

      **7.**    **There was No Meeting of the Minds or a Unilateral Mistake on the Part of Little Orbit Regarding the Meaning of "Revenues"**

Unfortunately, in putting together the short form settlement "terms sheet" the parties failed to specify whether "revenues" meant "gross revenues" or "net

revenues." That is unfortunate as the parties later disagreement as to the meaning of "revenues" led to an impasse in completing the planned long form agreement. Plaintiff's consent to the Settlement Terms Sheet was given under the mistaken belief (if Defendants' position is correct) that the term "revenues" meant revenues after industry standard and customary deductions already agreed to between the parties in the Development Agreement. Plaintiff will suffer material harm if no deductions are to be allowed as that greatly changes the amounts that have to be paid to Defendants and kills any hope of Plaintiff ever recovering its investment into the Game.

The District Court's Order failed to address the substantial harm to Plaintiff and Defendants Opposition does not directly address such harm but tries to explain it away by arguing "there is no reason that Little Orbit paying Descendent a percentage of revenues or gross income would be unconscionable, as the BSTS was carefully negotiated by skilled counsel at arm's length, Descendent owns the relevant intellectual property to the game, and royalties are typically based on revenues and not on margins or profits, which are subjective and easy to manipulate." Opp at p. 20.

This argument totally ignores the fact those "arm's length negotiations" were for a license covering "relevant intellectual property" Descendent claims to own but the development of which was largely funded by Little Orbit. Additionally, it is Little Orbit which agreed to also invest at least another ███████ to complete the development of the Game. Yet, Defendants are now

claiming that Little Orbit should also be charged with all costs for marketing, distributing and maintaining such game in the market place (standard industry deductions) such that Descendent will receive an unjustified and unearned windfall totally contrary to what was in place between the parties previously. The substantial harm to Little Orbit is explained in more detail in the Motion at pp. 19-22.

It does not matter that the settlement served to replace the earlier Development Agreement. That Agreement was the starting point in the parties' negotiations, not a new deal starting from scratch, and therefore such negotiations must be viewed with that "course of dealing" in mind.

Put simply, why would Little Orbit settle and provide Descendent with better terms than provided for in the original Development Agreement, when Little Orbit was taking on all of the substantial financial obligations and risk required to fund and finish the game? That makes no sense at all and shows the substantial injury that Little Orbit will suffer should Defendants belated claim it is entitled to be paid its share of "gross revenues." Additionally, the type of deductions sought by Little Orbit are consistent with what the parties had previously agreed to under the Development Agreement. Yet, Defendants now claim it is not reasonable to believe they would agree to deductions which are "subjective and easy to

manipulate" even though that is exactly what was provided for in the parties' Development Agreement.

Defendants again cherry pick one part of the Black's Law Dictionary definition of "revenues" – even though no one consulted such definition during the settlement conference. Even more importantly, Defendants totally ignore the additional meaning by Little Orbit before the District Court and again in its Motion. See Motion at 20. Additionally, that same definition from Mirriam-Webster's also makes clear that "profit" is a synonym for "revenue". Likewise, "income" is a synonym for "revenue." [App II at 144] Those meanings show that Little Orbit's interpretation is a reasonable one.[3]

---

[3] Defendants make a non-sensical argument in their footnote at the bottom of Page 23 that Little Orbit has "argued at length" as to meaning of "profits" but provides no citation to any such argument in the Emergency Motion. Defendants' also claim "Little Orbit and its counsel have confused 'Revenues' with other, very dissimilar words and concepts." Again, no citation is provided but even more importantly, "revenues" and "profits" are not dissimilar words and concepts. As noted, "profits" is listed as a synonym for "revenues" in the Mirriam-Webster Dictionary definition. [App II at 144]

### 8. Little Orbit Never Requested an "Extension of Time" to Complete Development of the Game

The District Court found: "The Court agrees with Defendants and finds that Plaintiff is not entitled to any deadline extension." Order at p. 8. App I at 10] However, Little Orbit never requested any extension of time, but merely asked the Court to confirm the proper deadline for Little Orbit to complete development of the game, which should have been either 1 year from the date Defendants finally turned over the IP assets covered by the license or 1 year from May 24, 2021, as provided by the District Court's earlier Order providing all deadlines based on so many days from "signing [a] written memorialization" would run from May 24, 2021. The District Court's ruling is not only contrary to the meaning and intent behind the parties' agreeing all deadlines under the BSTS would run from the signing of a "written memorialization" but also the District Court's earlier Order providing all such deadlines are to run from May 24, 2021.

Nothing in Defendants' Opposition alters the foregoing.

### 9. Defendants' Demand for "Adequate Assurance"

Defendants argue that "the Respondents' demanded, and the district court ordered, Little Orbit to provide adequate assurance of due performance of Little Orbit's financial and development obligations under the BSTS. (App. V. IV at pp. 45-46)." This argument perhaps best shows that Little Orbit will likely prevail on

the merits as it is a point from the Second Motion to Enforce which Little Orbit was never allowed the opportunity to file any opposition.

Defendants try to paint Little Orbit as a deadbeat unable or unwilling to pay its debts. That is by no means the case. Had Little Orbit been allowed to opposed Defendants' Motion it would have shown it has successfully published over 20 popular video games and maintains an active gamer website with over 10 millions users. There is no doubt that Little Orbit has taken a huge financial loss due to its over ████████ investment in the Game which has been the subject of this litigation which are sunk costs for which there has not yet been any return. Nonetheless, Little Orbit is an on-going and thriving business. While such proof should not be needed, Little Obit has deposited another ████████ into its lawyer's trust account now totaling ████████ to provide yet further proof it has the funds necessary to complete the development of the game once the issues between the parties are resolved. Richardson Reply Declaration, ⁋ 3. In this regard it is truly sad that after entering into the BSTS Defendants have done everything possible to impede that development including refusing to turn over a complete and up to date copy of "all game IP" until finally prompted to do so by Plaintiff's Motion to Set Aside.

First and foremost, the District Court erred in ordering Little Orbit to provide Defendants with "adequate assurance" without ever letting Little Orbit address (file and opposition to) the Motion to Enforce. In fact, it bears noting when the demand was made by Defendants – via email dated July 9, 2021. [App. IV at pp. 45-46] This is while Little Orbit's Motion to Set Aside was still pending and was before Descendent finally provided Little Orbit with a copy of the game IP assets. Notably, the subject email also alleges that Little Orbit had missed three

payments, notwithstanding the District Court's June 17, 2021, Order providing the payments would due dating from May 24, 2021, not the date of the BSTS. In any event, there was no reason for Little Orbit to respond to such demand pending the outcome of its Motion, which ruling also granted Defendants' Motion to enforce even though Little Orbit had not yet responded thereto.

Had Little Orbit been provided the opportunity to respond it would have shown the District Court that either no such assurance was necessary or it could have provided proof of sufficient assets to comply with its obligations under the BSTS – once the issues between the parties are resolved.

### 10. The District Court's Previous Order Does Not Preclude Little Orbit from Raising the Issues in this Appeal

Defendants' argue that the District Court's adoption of Magistrate Early's recommendation by Order dated June 17, 2021, was not challenged and therefore Little Orbit lost the ability to challenge a number of alleged findings. That is not the case, however, as the Motion was denied as premature: "the Motion is premature and thus should be denied." [App II at 243]

Moreover, the Magistrate made very limited "findings" – none of the findings asserted by Defendants were within the magistrate's specific findings. [App II at 243-44] The rest of the language relied on Defendants were merely discussion, apparently for the parties future guidance and was merely advisory dicta. No issues are barred by the Magistrate's earlier findings.

### 11. Descendent is the Party Which Breached the Underlying Development Agreement

While not germane to the instant Motion, Defendants nonetheless repeatedly accuse Little Orbit of breaching the original Development Agreement. But that was not the case. Descendent filed a notice of breach on Feb 1, 2019, that was immediately cured by Little Orbit on Feb 4, 2019. Then, Little Orbit filed a notice of breach against Descendent on Feb 4, 2019, for its repeated failure to satisfy its contract requirements. No further payments were due to Descendent unless and until it cured the breach – which never happened. Little Orbit was therefore forced to terminate the agreement in March.  If Defendants are so confident that it was Little Orbit which breached the Development Agreement it should have consented to Little Orbit's Motion to Set Aside the BSTS and let such issues be decided on the merits.  It did not and will not because it knows it will lose if the merits are ever addressed.  In this regard, it should be remembered that the incentive for Little Orbit to enter into the BSTS was the realization that the only hope for Little Orbit to ever have a chance of recovering its over ███████ investment in the game was to get the game completed and to market, not any concern over addressing the merits of this action against a defunct former game developer which never completed a single game.

## V.    CONCLUSION

For the foregoing reasons, good cause exists for this Court to issue a stay of the July 27, 2021, Order and the BSTS pending this appeal.  If a stay is not issued this appeal will become moot, since the time to complete the game set out in the BTST will have expired and Little Orbit will suffer the irreparable loss of millions of dollars if it is not allowed to complete the video game.  Based on potential mootness of this appeal or irreparable injury to Little Orbit the Court should enter an Order staying the District Court's July 27, 2021, Order and tolling all deadline under the BSTS until this appeal has been decided.


DATED: September 10, 2021          **LAW OFFICES OF M. DANTON RICHARDSON**


By:   /s/ M. Danton Richardson
                    M Danton Richardson
          ***Attorney for Plaintiff/Appellant,***
          LITTLE ORBIT LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.  Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

<u>/s/ M. Danton Richardson</u>
   M. Danton Richardson
Attorney for Plaintiff/Appellant
Little Orbit LLC

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply does not comply with the type-volume limitation of Fed. R. App. P. 27 because it contains 6,439 words. Appellant is filing contemporaneously herewith a Motion for Permission to File Oversized Reply in Support of Emergency Motion for Stay. This Reply complies with the typeface and the type-style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

/s/ M. Danton Richardson

M. Danton Richardson
Attorney for Plaintiff/Appellant
Little Orbit LLC