Appeal No. 21-55852

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

LITTLE ORBIT, LLC
Plaintiff – Appellant,

vs.

DESCENDENT STUDIOS INC. and ERIC PETERSON,
Defendants – Appellees

_____

On Appeal from the United States District Court for the Central District of California
Civil Action No. 8:20-cv-00089-DOC-JDE, Hon. David O. Carter, Judge

_____

## APPELLANT'S EXCERPTS OF RECORD

## Vol. I of IV

_____

M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LAW OFFICES OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101
Telephone: (949) 677-6434
Attorneys for Plaintiff/Appellant, LITTLE ORBIT LLC

1

Case 8:20-cv-00089-DOC-JDE   Document 99   Filed 07/27/21   Page 1 of 9   Page ID #:1423

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-cv-00089-DOC-(JDEx)          Date: July 27, 2021

Title: LITTLE ORBIT LLC V. DESCENDENT STUDIOS INC. AND ERIC PETERSON

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER DENYING PLAINTIFF'S MOTION TO SET ASIDE THE BINDING SETTLEMENT TERMS [88] AND GRANTING DEFENDANTS' SECOND MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS [96]**

     Before the Court is Plaintiff Little Orbit LLC's ("Plaintiff") Motion to Set Aside the Binding Settlement Terms Sheet ("Motion to Set Aside") (Dkt. 88) and Defendants Descendant Studios and Eric Peterson's (collectively, "Defendants") Second Motion to Enforce the Binding Settlement Terms Sheet ("Motion to Enforce") (Dkt. 96). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. The Court hereby **DENIES** the Plaintiff's Motion to Set Aside and **GRANTS** the Defendants' Motion to Enforce.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-000089-DOC-(JDEx)                                    Date: July 27, 2021

Page 2

## II.   Background

### A. Facts

In 1995, major video game developer and publisher Interplay Productions Corp. ("Interplay") released Descent, a first-person shooter ("FPS") game. Mot. to Set Aside at 6. Descent was a commercial success: together with its sequel, Descent II, it sold over 1.1 million units as of 1998. *Id.* at 7.

In or around November 1994, several former game developers, including Defendant Eric Peterson ("Peterson"), announced that they were forming Defendant Descendent Studios ("Descendent") to work on a game ("Game") similar to Descent in play style. *Id.* Peterson is and was the CEO of Descendant. *Id.*

Through a Kickstarter campaign, Descendent raised over $600,000 for the development of this new game. *Id.* Descendent also entered into a license agreement with Interplay to use the "Descent" name for the Game. *Id.*

Plaintiff is a worldwide video game developer and publisher. *Id.* at 6. When Descendent ran out of funds by August 2017, it reached out to Plaintiff for financial support to complete the development of the game in return for which Plaintiff would publish the video game. *Id.* at 7. The parties entered into a "Development Agreement" effective September 1, 2017. *Id.*

Plaintiff contends that Descendent "failed to meet any of the delivery dates" required by the Development Agreement. *Id.* As a result, the parties entered into a "Terms Sheet" addendum to "salvage the project and allow Descendent more time to complete" the Game. *Id.* Plaintiff asserts that Descendent "still continued to fail to meet the deliverable requirements and specifications[,] thereby breaching the Terms Sheet." *Id.* Because of the resulting delays, Descendent "ultimately failed to timely deliver the completed Game required under the specifications of the Agreement or otherwise comply with the Terms Sheet," and Interplay has correspondingly cancelled the license agreement. *Id.* at 8.

Plaintiff alleges that it made several payments under the Terms Sheet addendum. *Id.* However, on January 30, 2019, Plaintiff sent half of the payroll amount, because Descendent had missed two deadlines in a row. *Id.* On February 1, Descendent sent a "Notice of Breach" for non-payment. *Id.* Plaintiff cured the alleged breach by paying the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-CV-000089-DOC-(JDEx)                                Date: July 27, 2021

                                                                                            Page 3

remaining half on February 4, and then filed its own "Notice of Breach" for Descendent's failure to meet its delivery requirements. *Id.* Descendent, however, failed to cure the alleged breach. *Id.* Plaintiff contends that this failure to cure relieves it of any obligation to make any further payments to Descendent, and subsequently filed this lawsuit. *Id.*

With the help of Magistrate John D. Early, the parties ultimately reached a settlement agreement ("Settlement Terms Sheet"). *Id.* at 5. Under this agreement, Plaintiff was to take over and complete the development of the Game under a license from Descendent covering "all Game IP," and would make certain payments in that regard. *Id.* Plaintiff argues, however, that Defendants have "admitted" that all Game IP, except for a snapshot version of the game code as it existed as of some unknown time, no longer exists. *Id.* The original artwork and the project history, among other assets, are missing. *Id.* Thus, Plaintiff filed this Motion to Set Aside to be relieved from any obligation to make payments under the Settlement Terms Sheet due to Defendants' failure to deliver to Plaintiff "all Game IP" as provided in the Settlement Terms Sheet. *Id.*

### B. Procedural History

Plaintiff filed its complaint with this Court on January 16, 2020. Complaint. (Dkt. 1). Plaintiff filed a Motion to Set Aside the Binding Settlement Terms Sheet on June 24, 2021 ("Motion to Set Aside") (Dkt. 88). Defendants opposed the Motion to Set Aside on July 2, 2021 ("Opposition") (Dkt. 91). On July 13, 2021, Plaintiff replied ("Reply") (Dkt. 94). Defendant filed a Motion to Enforce the Binding Settlement Terms Sheet on July 21, 2021 ("Motion to Enforce") (Dkt. 96).

### III.   Legal Standard

Federal Rule of Civil Procedure 60(b) provides that the Court may relieve a party from a final judgment or order. Pursuant to Rule 60(b), a court may set aside a final judgment only under specific conditions, including a showing of "(1) mistake, inadvertence, surprise, or excusable neglect . . . (3) fraud, misrepresentation, or misconduct by an opposing party; . . . [and] (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (3), (6).

Rule 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice." *U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Deferring to the Supreme Court's admonitions, the Ninth Circuit has held that Rule 60(b)(6) relief "may be had 'to accomplish justice,' but only under 'extraordinary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-000089-DOC-(JDEx)                  Date: July 27, 2021

Page 4

circumstances.'" *Id.* (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

## IV. Discussion

### A. Alleged Failure of Consideration and Fraud by Defendants

Plaintiff contends that Defendants' inability to deliver the Game IP assets constitutes a failure of consideration on their part. Mot. to Set Aside at 9. Plaintiff asserts that under the Settlement Terms Sheet, Defendants were to deliver all the Game IP assets, including all original artwork and project history, to Plaintiff. *Id.* However, on June 15, 2021, Defendants produced only a snapshot copy of the game code as it existed on some unknown date. *Id.* Peterson allegedly "advised that the 'project history no longer exists' and that all Plaintiff needs is the code (even claiming there was no obligation to deliver anything to Plaintiff)." *Id.* (quoting Declaration of Matthew Scott, Ex. D.). As such, because of Defendants' failure of consideration in not delivering all Game IP assets, Plaintiff argues that it has the right to rescind the contract. *Id.* at 10.

Moreover, Plaintiff contends that Defendants' failure to deliver the full source code and the entire project history constitutes fraud. Plaintiff also claims that during the parties' settlement negotiations, Defendants "purposefully concealed the fact that the game assets had not been preserved as required by the Development Agreement." Mot. to Set Aside at 14. According to the Plaintiff, this "material omission" not only reflects Defendants' bad faith, but also constitutes fraud, because Defendants promised to deliver assets it knew it could not deliver. *Id.* Therefore, Plaintiff argues that the Court should set aside the Settlement Terms Sheet due to Defendants' fraudulent settlement. *Id.* at 11, 14.

Defendants assert that under the Settlement Terms Sheet, they were not obligated to provide "game software, revised game software, complete functional copies of each prior version of the game software, or separate files for the artwork." Opp'n. at 3. The deliverables were expressly stated and limited to "pre-order data, Kickstarter data, and early backer data," which have all been provided to Plaintiff. *Id.*; Settlement Terms Sheet § 10. Plaintiff "did not ask for copies of the game software during the negotiations of the [Settlement Terms Sheet]," and Plaintiff also neither sought nor demanded the "updated game code, the separate artwork, and the complete writable versions of all prior game code versions." *Id.* Defendants further argue that Plaintiff "does not need more than the [snapshot of the] game code [Defendants provided] to finish the game." *Id.* at 5. Defendants also point out that Plaintiff admitted that the "artwork already contained in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-000089-DOC-(JDEx)     Date: July 27, 2021

Page 5

the code can be used to complete the game." *Id.* Regardless, after Plaintiff filed the Motion to Set Aside, Defendants correspondingly delivered all the Game IP to Plaintiff. Reply at 3. Therefore, because Defendants have recovered from a third party and provided Plaintiff with the original artwork source files, Defendants argue that this point is moot, and that they did not commit material breach. Opp'n. at 6.

Additionally, Defendants claim that they have not committed fraud. Opp'n. at 11. Defendants point out that Plaintiff "admitted that it merely *assumed* that [the Game IP] assets had been stored," and that Plaintiff could not identify any "representation by the Defendants that they still had or had stored the artwork source or executable copies of every prior version of the game software before the [Settlement Terms Sheet] was signed." *Id.* Furthermore, "neither delivery nor the state of the reportedly missing historical deliverables were ever discussed during the settlement conference nor included in the [Settlement Terms Sheet]." *Id.* at 12. As such, Defendants argue that Plaintiff failed to demonstrate that Defendants committed fraud in not preserving and delivering the full source code and the entire project history.

The Court agrees with the Defendants and finds that Plaintiff's claims are moot. A case is moot when (1) "the issues presented are no longer live" or (2) the parties lack a "legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotations omitted). Once a case becomes moot, courts are "required to dismiss it." *Dufresne v. Veneman*, 114 F.3d 952, 954 (9th Cir. 1997). Here, Plaintiff contends that Defendants' inability to deliver all Game IP assets constitutes a failure of consideration. Plaintiff also argues that Defendants, in not delivering these assets, have committed fraud. However, these claims are moot, because Defendants have now delivered all the requested Game IP assets to Plaintiff, and the issues presented are no longer live. As such, Plaintiff's claims regarding Defendants' failure to deliver Game IP assets are moot.

### B. Plaintiff's Mistaken Definition of "Revenue"

Plaintiff argues that the Settlement Terms Sheet should be set aside due to Plaintiff's mistake in believing that the term "revenues" meant revenues after industry standard and customary deductions. Mot. to Set Aside at 3. Defendants, on the other hand, interpret "revenues" to mean that no such deductions are allowed. *Id.* Plaintiff contends that Defendants' definition would "forc[e] Plaintiff to bear all of the expenses, and would kill any hope of Plaintiff ever recovering its investment into the Game." Reply at 7. As a result, Plaintiff claims that it will "suffer material harm if the agreement is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-CV-000089-DOC-(JDEx)                        Date: July 27, 2021

Page 6

enforced" based on Defendants' definition. Mot. to Set Aside at 3. Thus, Plaintiff urges the Court to set aside the Settlement Terms Sheet due to Plaintiff's mistaken interpretation of the term "revenues."

      Defendants argue that Plaintiff's basis for its interpretation of "revenues" is erroneous. Plaintiff claims that it construed "revenues" to be the same thing as "Net Sales" under the Development Agreement, which Defendants contend is "untrue, illogical[,] and objectively baseless." Mot. to Enforce at 6. The Development Agreement defines "Net Sales" to be "all monies paid to and received by [Plaintiff], including Net Payments, for sales and exploitation of the Game, net or less standard and customary deductions for returns . . .." Declaration of Matthew Scott, Ex. A. Defendants point out that the Development Agreement never defined "revenue" and its definition of "Net Sales" also does not use the terms "revenues" or "profits." Mot. to Enforce at 6. Furthermore, Defendants claim that the parties' relationship under the Settlement Terms Sheet "is not based on and looks nothing like their relationship under the Development Agreement." *Id.* at 7. In fact, Plaintiff's alleged breach and termination of the Development Agreement and the subsequent terms sheet addendum caused this litigation. *Id.* at 6. As such, there is no reasonable justification for Plaintiff to have defined "revenues" on the basis of the term "Net Sales" in the Development Agreement.

      Additionally, Defendants assert that "it would be exceedingly inappropriate to set aside a settlement agreement based on a[n] *unilateral* mistake when the settlement was reached through lengthy negotiations including parties represented by counsel, with the assistance of the Court." Opp'n. at 9. Defendants argue that it is not unconscionable for Plaintiffs to pay Defendants a percentage of revenues or gross income, because the Settlement Terms Sheet was "carefully negotiated by skilled counsel at arm's length, Defendants own the relevant intellectual property to the [G]ame, and royalties are typically based on revenues and not on margins or profits, which are subjective and easy to manipulate." *Id.* at 10. Based on the agreement between the parties, "Defendants would receive royalties and payments based on a percentage of revenues, meaning gross income from sales and licensing." *Id.* at 11. Therefore, Defendants contend that there is no basis for setting aside the Settlement Terms Sheet based on Plaintiff's mistake. *Id.* at 10.

      The Court finds that the Settlement Terms Sheet should not be set aside based on Plaintiff's mistaken definition of "revenues." Under Rule 60(b)(1), a court has the discretion to set aside a final judgment if there is a showing of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A court, however, can also deny

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-000089-DOC-(JDEx)　　　　　　　　　　　　　　　　Date: July 27, 2021

Page 7

a Rule 60(b)(1) motion if "(1) the [plaintiff's] culpable conduct led to the default; (2) the [plaintiff] has no meritorious defense; or (3) the [defendant] would be prejudiced if the judgment is set aside." *Price v. Seydel*, 961 F.2d 1470, 1473 (9th Cir. 1992) (citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)). Additionally, this tripartite test is "disjunctive," so the court may deny the motion on any part. *In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991).

　　　Here, the Court finds that Plaintiff does not have a meritorious defense for mistakenly defining "revenues" as revenues after industry standard and customary deductions. The Plaintiff erroneously argues that its definition reasonably arises from the parties' prior course of conduct, referring to the Development Agreement. California law permits the use of extrinsic evidence "'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonable susceptible.'" *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 343 (2004) (quoting *BMW of North America, Inc. v. New Motor Vehicle Bd.*, 162 Cal.App.3d 980, 990, n. 4 (1984)). Plaintiff, however, wrongly relied on the Development Agreement: the agreement does not explicitly refer to or define the term "revenues." *See* Declaration of Matthew Scott, Ex. A. Additionally, the Development Agreement had been terminated, and the parties' relationship under the Settlement Terms Sheet also differs from that under the Development Agreement. Mot. to Enforce at 7. There was no reasonable basis for Plaintiff to mistakenly define "revenues," and thus, Plaintiff does not have a meritorious defense. Therefore, the Court finds that Plaintiff's mistake does not warrant setting aside the Settlement Terms Sheet.

### C. Due Date of First Payment and of Game Development and Release

　　　Finally, Plaintiff argues that the date of the first payment should not run until June 29, 2021, when Defendants delivered the Game IP assets. Reply at 2. Plaintiff similarly argues that the date on which the one year starts to run for Plaintiff to complete the development and commercially release the Game should be June 29, 2021, or, at the very earliest, May 24, 2021 (the date that Judge Early determined Plaintiff's payment obligation should begin). *Id.*

　　　Defendants, on the other hand, argue that Plaintiff is not entitled to any extensions of time, given that Plaintiff had "made virtually no effort to develop the game in the past eight months since the [Settlement Terms Sheet] was signed in November of 2020." Mot. to Enforce at 10. It was "completely irresponsible" for Plaintiff to wait so long to "make any effort to develop the game." *Id.* Defendants claim that they have formally demanded

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-CV-000089-DOC-(JDEx)  Date: July 27, 2021

Page 8

Plaintiff to "disclose the status of its development efforts, its financial condition, and the status of its fundraising efforts." *Id.* at 11. Defendants point to Plaintiff's failure to respond as evidence that Plaintiff has "done virtually nothing to finish the game . . . and lacks the funds to complete the game." *Id.* Additionally, Plaintiff allegedly has not yet paid Descendant the money it owes, despite now having all the necessary game assets. *Id.* As such, Defendants contend that Plaintiff is not entitled to any deadline extension, and request the Court to order Plaintiff to pay Defendants the money it owes.

The Court agrees with Defendants and finds that Plaintiff is not entitled to any deadline extension. Plaintiff argues that the deadline should run from when Defendants delivered the game IP assets. However, under the Settlement Terms Sheet, the Defendants were not required to provide the Game IP assets; the Defendants' obligations were limited to licensing the Game and delivering only a few specified items of customer data. *Id.* at 10-11. After signing the Settlement Terms Sheet and receiving the game code, Plaintiff could have started developing the Game. However, Plaintiff waited for several months before demanding the Game IP assets from Defendants, reflecting Plaintiff's own lack of effort and initiative in completing the Game. Therefore, the Court finds that Plaintiff is not entitled to any deadline extension, and orders Plaintiff to pay what it owes to Defendants.

Moreover, the Court orders Plaintiff to provide Defendants with proof of funds, bank and financial statements, and adequate assurance of due performance. Defendants claim that an Experian Credit Report shows that Plaintiff has a "'high risk' business credit score," and Defendants are accordingly concerned that Plaintiff lacks the funds to pay them. *Id.* at 1. Plaintiff has also failed to make the first two settlement payments to Defendants and has "plainly stated that it has no intention of making any of the agreed upon monetary settlement payments". *Id.* Thus, given these concerning circumstances, the Court orders Plaintiff to provide Defendants with proof of funds, bank and financial statements, and adequate assurance of due performance.

///

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:20-CV-000089-DOC-(JDEx)             Date: July 27, 2021

Page 9

## V. Disposition

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Set Aside Binding Settlement Terms Sheet, and **GRANTS** Defendant's Motion to Enforce Binding Settlement Terms Sheet. Additionally, the Court **DENIES** granting attorneys' fees to both sides.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11             Initials of Deputy Clerk: kd

CIVIL-GEN

## CERTIFICATE OF SERVICE

    I hereby certify that on November 12, 2021, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                            /s/ M. Danton Richardson
                                               M. Danton Richardson
                                            Attorney for Plaintiff/Appellant
                                            Little Orbit LLC